## Weiscarger v. Wilkes-Barre Independent Company

Before Flannery, Lewis and Pinola, JJ.

*J. Earl Langan,* for plaintiff.

*Reynolds, Reynolds & Doran,* for defendant.

FLANNERY, J., July 12, 1950.—Plaintiff brought an action in trespass for libel as a result of an article published by defendant in its newspaper, the Sunday Independent, on August 7, 1949.

At the time plaintiff was a candidate for reëlection to the office of City Controller of the City of Pittston. The article, which speaks for itself, is as follows:

"Remember a few weeks ago when Mayor John J. Allardyce brushed off the opposition with the snappy statement, in effect, that the opposition, headed by Michael Demech, was the least of his worries? Since then the boys at city hall have become desperate. They, the Grasshoppers, attacked several of their opponent's petitions. Then they stooped to intimidate a widow.

"One of the opposition candidates is Lawrence Delaney, 121 Union Street, Upper Pittston. He is aspiring for a seat on council. Delaney, a Lehigh Valley trainman, had been employed during slack times at the Mullen Cafe, South Main Street, operated by Mrs. Mary Mullen, widow of Ted Mullen.

"City Controller Ronald Weiscarger, war hero, called and told Mrs. Mullen that it would be to her advantage to get Delaney out of the fight. City hall would keep a watchful eye on the business. The result was that Delaney refused to quit and Mrs. Mullen was forced to fire him. Pretty cheap stuff, especially for a group that's not worried.

"The consensus is that if Ted Mullen were alive he would have thrown Weiscarger in the street, even if the hero had all his medals on.

"Opinion among veterans here is that under democratic process everyone should be given an even chance. That's why Weiscarger fought a war. The victory certainly did not give him the right to pressure a widow.

"Weiscarger is a candidate for re-election. His opponent is Vincent Wachs, 112 Butler Street. Both are Republicans. The Wachs petition was attacked by the Grasshoppers on the grounds that the signatures are not in order. A final decision on that and other attacked petitions will be found elsewhere in the Sunday Independent."

The pleadings consist of the complaint, defendant's answer and new matter, and plaintiff's reply to the new matter. The publication is admitted, but the affirmative defenses of truth, privilege and fair comment are raised.

The matter now comes before the court on a motion filed by defendant for judgment on the pleadings based on the theory that the article in suit is neither libelous nor capable of a libelous meaning.

Reference was made at the argument to the effect that the motion was made too late, but the point was not pressed, and we shall not consider it in extenso. Suffice to say the motion is in order at this time.

The Rules of Civil Procedure, under Rule 1034, provide:

"(a) After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.

"(b) The Court shall enter such judgment or order as shall be proper on the pleadings."

It must be conceded that the trial was not, and could not possibly be, delayed by the pending motion and were objections made to its consideration on such grounds they would have to be overruled.

We are faced therefore with the question, Is the article libelous or capable of a libelous meaning?, which is a question of law for the court in the first instance.

"It was for the Court to say, as a matter of law, whether the writings in suit were capable of a libelous meaning. If they were, it then became the jury's duty to determine whether they had such meaning in fact" (citing cases): Bausewine v. Norristown Herald, 351 Pa. 634, 643.

As we proceed to the question it is important to keep in mind the legal definition of libel which the Supreme Court has laid down in language clear and certain.

"A libel is a malicious publication, expressed either in printing or writing, or by signs and pictures, tending either to blacken the memory of one who is dead, or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule": Sarkees v. Warner-West Corporation, 349 Pa. 365, 367.

With this definition before us we turn to the article in question to discover wherein it tends to blacken the

reputation of plaintiff and expose him to public hatred, contempt or ridicule.

According to the article plaintiff was a candidate for public office. One of the opposition, Lawrence Delaney, was a part-time employe at the Mullen Cafe, operated by Mrs. Mary Mullen, a widow. It is charged that plaintiff exerted "pressure" on the widow to get Delaney out of the fight by telling her that such "would be to her advantage" and that "City hall would keep a watchful eye on the business". Delaney refused to quit and, as a result, Mrs. Mullen "was forced to fire him".

It is the unanimous opinion of those members of this court who sat at the argument that the article was neither libelous nor capable of a libelous meaning and the issue is ruled by the decision of the late Chief Justice Maxey in McAndrew v. Scranton Repub. Pub. Co., 364 Pa. 504, and cases there cited.

Surely it is not uncommon for a candidate for public office to seek to eliminate opposition and it is the duty of City Hall through the medium of its police to keep a watchful eye on every business closely regulated by law as this business was. Taken literally then, the article is innocuous and quite in keeping with the traditions that prevail in the heat of a hotly contested election. But plaintiff would have us derive an innuendo inimical to him and such as to bring him into public hatred, contempt and ridicule.

That innuendo as set forth in the complaint is:

"Thereby meaning and stating that plaintiff had wilfully and maliciously by threats and duress, wrongfully compelled the discharge of Lawrence Delaney from his place of employment because he had become a candidate for nomination to council of the City of Pittston."

Does such an innuendo follow reasonably from the language of the article or can such be logically construed or imported from its terms? We think not. We

can find no threats, nor can we discover duress anywhere in it unless we presume that the cafe in question was conducted in an illegal manner and was protected in its violation by the city authorities. That would be a violent presumption totally unwarranted to any fair-minded citizen. It would be to torture the language of the article in order to elicit a meaning utterly alien to its context. Apropos of this phase of the matter our Supreme Court has held:

"The purpose of an innuendo, as is well understood, is to define the defamatory meaning which the plaintiff attaches to the words; to show how they come to have that meaning and how they relate to the plaintiff: Price v. Conway, 134 Pa. 340. But it cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear: Hackett v. Providence Telegram Publishing Co., 18 R. I. 589. It is the duty of the court in all cases to determine whether the language used in the objectionable article could fairly and reasonably be construed to have the meaning imputed in the innuendo. If the words are not susceptible of the meaning ascribed to them by the plaintiff and do not sustain the innuendo, the case should not be sent to a jury. The learned trial judge sustained the demurrer in this case, and we are of opinion that he committed no error": Naulty v. Bulletin Co., 206 Pa. 128, 134.

And so with the article before us, to derive an innuendo we must introduce new matter, enlarge the natural meaning of the words, and give the language a construction it will not bear.

We are satisfied that the objectionable article is neither libelous nor capable of a libelous meaning either literally or by reasonable innuendo and accordingly:

Now, July 12, 1950, the motion is allowed and it is ordered and directed that judgment be entered for defendant on the pleadings.