## Richwine, Appellant, *v.* Pittsburgh Courier Publishing Co., Inc.

Argued April 18, 1958. Before RHODES, P. J., HIRT, GUNTHER, WOODSIDE, ERVIN, and WATKINS, JJ. (WRIGHT, J., absent).

*Mark E. Garber, Jr.*, with him *Samuel J. Margiotti, Garber & Garber*, and *Margiotti & Casey*, for appellant.

*Henry R. Smith, Jr.*, with him *Jones, Smith & Freeland*, for appellee.

OPINION BY WATKINS, J., June 11, 1958:

This is an appeal from the decision of the Court of Common Pleas of Allegheny County sustaining preliminary objections to an action in trespass for libel.

The appellant, Roy E. Richwine, trading and doing business as Williams Grove Park, is the owner and operator of an amusement park situate in Monroe Township, Cumberland County, Pennsylvania. The appellee,

Pittsburgh Courier Publishing Co., Inc., is the publisher of a negro newspaper in Pittsburgh, Pennsylvania and published the following article on September 15, 1956.

"The Harrisburg Windmill    By Lewis Ulen

"Zephyrs Start the Mill . . . Philosophus, our pet fire-eating dragon, who goes where angels fear to tread, gave us a delayed report of the annual orgy held in Williams Grove Park.

"This display of animalism, publicized, quite intentionally and erroneously, as a picnic, produced the usual mawkish fights, automobile accidents, stabbings and drunkenness.

"This is one affair promoted by Negroes which is a disgrace to Central Pennsylvania. The crowds will grow smaller each year until these 'business' men find it too unprofitable to promote."

Each year for the past 24 years the annual Civic Union picnic has been held in Williams Grove Park. The picnic is exclusively for negroes and is advertised as drawing in excess of 20,000 negroes from eight States and the District of Columbia.

The appellant brought his action in trespass on the ground that the above article was libelous to him and that he is entitled to damages. The appellee publishing company demurred by way of preliminary objections and by so doing admits for the purpose of this appeal, the truth of every well pleaded material and relevant fact and every inference fairly deductible from the facts so pleaded.

Judge Nixon sets forth the question involved in his opinion: "Libel may be defined as any malicious publication, written, printed or painted, which, by words or signs, tends to expose a person to ridicule, contempt, hatred, or degradation of character. Where the words are not in themselves libelous, as in this case, but are

of dubious import and their meaning is averred by innuendo, the truth of the innuendo is for the jury. However, whether or not the writing is fairly or reasonably capable of being found libelous in nature under the circumstances is a question of law for the court, and only after such question has been resolved does it then become a question of fact for the jury to determine if the publication actually was defamatory."

The function of the court and jury set forth in the Restatement of the Law, Torts, Section 614, "(1) The court determines whether a communication is capable of a defamatory meaning. (2) The jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient."

The court, however, must first determine whether the communication is capable of the meaning ascribed to it by the appellant and whether the meaning so ascribed is capable of being defamatory. If either of these questions are decided against the appellant, there is no question to be submitted to the jury.

"The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express." Restatement of the Law, Torts, Section 563. And its applicability to the appellant is where, "A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands it as intended to refer." Restatement of the Law, Torts, Section 564.

The late Chief Justice MAXEY who wrote the majority opinion in *McAndrew v. Scranton Republican Publishing Company*, 364 Pa. 504, 72 A. 2d 780 (1950), at page 511 said: "It is elementary that ' "An innuendo, however, can never add to nor change the [alleged] meaning of the defamatory statement, or operate as an averment, imparting into the statement anything which

is not a usual and natural presumption from the precedent words." ' . . . While it is a question of fact for the jury as to whether the defamatory statement was used and understood in the sense charged, the jury cannot be permitted to do this until the court has correctly determined that the statement supports the meaning plaintiff attributes to it.

"In Sarkees v. Warner-West Corporation, 349 Pa. 365, 37 A. 2d 544, this Court in an opinion by Justice HUGHES said: 'The innuendo must be warranted, justified and supported by the publication . . . "But it cannot be used to introduce new matter, or to enlarge the natural meaning of the words, and thereby give to the language a construction which it will not bear: Hackett v. Providence Telegram Publishing Co., 18 R. I. 589. It is the duty of the court in all cases to determine whether the language used in the objectionable article could fairly and reasonably be construed to have the meaning imputed in the innuendo. If the words are not susceptible of the meaning ascribed to them by the plaintiff and do not sustain the innuendo, the case should not be sent to a jury." See Ringer v. Winner, 309 Pa. 270, 163 A. 519.' "

Applying these principles of the law to the published article in this case we agree with the court below that the meaning of the words of the article must indeed be enlarged and expanded beyond their fair interpretation so that it can be reasonably said that the article "tends to blacken the appellant's reputation or to expose him to public hatred, contempt or ridicule."

We feel that a careful reading of the article discloses an intention on the part of the appellee negro newspaper to criticize the conduct and actions of negroes who attended and promoted the picnic in bringing disgrace, by their conduct and actions, to the negro

race as a whole and calling their (the negroes) attention to the fact that a continuance of such conduct and action will so reduce attendance at the picnic as might eliminate such future gatherings.

It certainly takes ingenuity and a stretch of the imagination to find that the white proprietor of the park, which is only mentioned as the situs of the picnic, in any way through the park's management, its agents or employees contributed to, caused, sanctioned, or permitted the alleged undesirable action and conduct. This would require the interpretation of the article to be such as would convey to the average reader the innuendo that the appellant was an unscrupulous business man who holds annual orgies for negroes at which he permits fights, stabbings and drunkenness. Such an interpretation is clearly unreasonable when the context of the article clearly shows the intention of a negro newspaper to criticize the conduct and actions of negroes at a picnic promoted by negroes.

As we said in *McGeary v. Leader Publishing Company*, 52 Pa. Superior Ct. 35 (1912), at page 45, ". . . and so it may be said generally, that the speaker or writer is accountable for the import of the words as they would naturally be understood by the hearer or reader. Ingenuity is not to be resorted to in order to ascribe to them either the more lenient or the more severe sense, but they are to be taken in the sense that fairly belongs to them, that is, 'in the plain and popular sense in which the rest of the world naturally understand them.' "

We agree with the court below that the words of the article are not susceptible of the meaning ascribed to them by the appellant and do not contain the innuendo necessary to make them defamatory so that the demurrer was properly sustained.

Order affirmed.