Volomino, Appellant, *v.* Messenger Publishing Company.
Blasko, Appellant, *v.* Messenger Publishing Company.

Argued March 25, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Herman H. Magram,* for appellants.

*Robert W. McWhinney,* with him *Goehring & Mc-Whinney,* for appellee.

OPINION BY MR. JUSTICE EAGEN, April 16, 1963:

These actions of trespass seek damages for alleged libel. The court below sustained preliminary objections to the complaints in the nature of a demurrer. The plaintiffs appeal.

Appellants are members of the Munhall Homestead Housing Association, a nonprofit private corporation, engaged in the business of maintaining and operating a housing project. They are also members of the corporate board of directors and serve as president and vice-president. The defendant is the publisher of a daily newspaper of general circulation. The alleged libel is based upon a series of articles and editorials published therein. The present actions are by the plaintiffs in their individual capacities. An additional action on behalf of the corporation still pending below is not presently involved.[1]

---

[1] In the corporation's suit, the court dismissed the preliminary objections and directed the defendant to answer. Therein the news material involved referred in a derogatory manner to the physical condition of the housing premises and not in any way to the character of the present plaintiffs. Words criticizing a corporation, without more, are not defamatory of a person connected with it: *Binder v. Daily News Pub. Co., Inc.,* 33 Pa. Superior Ct. 411 (1907).

The lower court ruled that the published writings were not capable of the defamatory meaning the plaintiffs attribute to them and that no libel occurred. After a careful reading of the material complained of, we subscribe to this conclusion.

It is contended that certain portions of the publications involved necessarily lead, inter alia, to the conclusion that the plaintiffs have in their connection with the housing project cheated the public, violated the law and stole the election in which their corporate positions were attained. If this were true, libel would clearly be present. However, we find no such serious implications in the writings, nor are any extrinsic facts stated which change the critical but nondefamatory words into defamatory utterances. As the court below stated, any such conclusion as plaintiffs assert "requires an extravagant mental excursion." There is nothing in the publications complained of, which suggests, intimates, or from which anyone reading them could infer, that the plaintiffs are guilty of the acts with which it is alleged they were inferentially charged. In short, the publications are not libelous at all. A cause of action in libel is not pleaded by merely alleging that a publication is "scandalous, malicious, defamatory and libelous." This allegation in itself does not give to the language a construction which it will not bear. See, *Sarkees v. Warner-West Corp.*, 349 Pa. 365, 37 A. 2d 544 (1944). A libel is a maliciously written or printed publication which tends to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession: *Schnabel v. Meredith,* 378 Pa. 609, 107 A. 2d 860 (1954); *Cosgrove S. & C. Shop, Inc. v. Pane,* 408 Pa. 314, 182 A. 2d 751 (1962). In a defamation case, it is the function of the court, in the first instance, to determine whether or not the communication complained of is capable of a defamatory meaning: Re-

statement, Torts, §614 (1); *Bogash v. Elkins,* 405 Pa. 437, 176 A. 2d 677 (1962); *Cosgrove S. & C. Shop v. Pane,* supra. The court below correctly concluded that the plaintiffs are reading into the publications a meaning that just is not there.

Orders affirmed.