# Thompson v. Farley

*Alan D. Williams*, for plaintiff.
*Snipes & White*, for defendant.

MONROE, J., November 6, 1964.—This is before us on a complaint in trespass for libel alleging that defendant published and caused to be published two statements which amount to accusations that plaintiff was guilty of "bribery and extortion and/or attempt to commit bribery and extortion and a conspiracy to

commit bribery and extortion." Defendant has filed preliminary objections to the complaint in the nature of a demurrer, a motion for a more specific pleading, and petition to strike allegations of a "summary investigation" made by police officers.

The grounds for the demurrer are that the contents of the publications (1) are not defamatory, (2) do not identify plaintiff as the person against whom they are directed, (3) are directed against a public official other than plaintiff, and (4) are absolutely privileged.

We cannot say that the complaint does not contain defamatory matter. For the purpose of the demurrer, defendant has admitted the truth of every well-pleaded material and relevant fact, and every inference fairly deducible therefrom: Richwine v. Pittsburgh Courier Publishing Co., Inc., 186 Pa. Superior Ct. 644 (1958). The complaint, after alleging that both plaintiff and defendant were members of the Middletown Township Board of Supervisors on August 28 and 29, 1963, the dates of the alleged libels, charges that defendant, intending to injure plaintiff, and to deprive him of his good name, his good reputation, his standing in the community, and intending to cause him a possible loss of earning power, and to be removed from his office of Supervisor of Middletown Township, did falsely, maliciously, wickedly and illegally make and publish of and concerning plaintiff, as such public officer, at a regular meeting of the Board of Supervisors of Middletown Township on August 28, 1963, in the presence of plaintiff and other board members, members of the public, and township employes, by a reading thereof and by distribution to reporters for publication in their respective newspapers, a prepared statement containing the alleged libelous matter, the contents thereof being set forth at large in the complaint. It is further alleged that defendant, on August 29, 1963, at Doylestown, Bucks County, Pa., distributed by means of his

servants, agents, employes, and others acting in concert with him, by mail and in person, "to all press and radio media serving the Bucks County community," a mimeographed statement under the heading "From: Bucks County Democratic Committee," containing libelous matter, the contents of which are also set forth at large in the complaint. The complaint further alleges that the statements were published in whole or in part by the newspapers and radio to whose representatives distribution had been made; that the statements were made and published by defendant in his individual capacity as a candidate for public office and in furtherance of his campaign for the public office he was then seeking. It sets forth the meaning or innuendo which plaintiff has ascribed to the said publications as constituting accusations of bribery, extortion, and attempts and conspiracy to commit the same. It categorically denies the truth of the accusatory statements and asserts plaintiff's innocence of bribery, extortion and attempts or conspiracy to commit the same.

The publications may fairly and reasonably be construed as statements on the part of defendant which, surpassing the realm of rumor and suspicion, amount to an expression of positive knowledge on his part of an authentic attempt by a member of the Board of Supervisors of Middletown Township to obtain a monetary or other consideration in exchange for a change of his vote on a question then pending before said board, with the result that the stand of the board would be converted from three to two against the question, to two to three for the question, thus imputing to a board member official conduct incompatible with the proper performance of his duties. A false imputation or accusation that the holder of a public office was guilty of graft and corruption is defamatory and actionable per se: Coates v. Wallace and William Sproul, 4 Pa. Superior Ct. 253 (1897) ; Commonwealth v. Swallow,

8 Pa. Superior Ct. 539 (1898); Bruce v. Reed, 104 Pa. 408 (1884); Dreier v. Wilkes-Barre Independent Co., 42 Luz. 47; George L. Reed v. The Patriot Company, 45 Dauph. 1. See also Farrell v. Triangle Publications, Inc., 399 Pa. 102 (1960).

If the statements are examined with a critical legalistic eye, they fall short of charging accomplished bribery and extortion. But,

". . . The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be given by judges and juries the same signification that other people are likely to attribute to them." Boyer v. Pitt Publishing Company, 324 Pa. 151-157 (1936).

In our opinion the statements are fairly and reasonably capable, in the minds of average, legally untrained, persons of the meanings imputed to them by the innuendo, leaving it to a jury to say whether they actually convey to the minds of such persons, the meanings so ascribed to them.

While the publications do not identify plaintiff as the supervisor against whom the accusations are directed, they do not exclude him from the field of their thrust. "Where a defamatory . . . publication or utterance is directed toward a comparatively small class or group all of whose constituent members may be readily identified and the recipients of a defamatory matter are likely to identify some, if not all, of them as the intended objects of the defamation, an individual member of the group may sue for damages done his reputation thereby": Farrel v. Triangle Publications, Inc., supra, page 105; Krupa v. Bristol Printing Company, 3 D. & C. 2d 20, 10 Bucks 138. The complaint does not specifically allege the number of persons constituting the Board of Supervisors of Middletown Township on August 28 and 29, 1963, but we may take

judicial notice that Middletown Township is a township of the second class and that a legally constituted board of such a township consists of five members: Act of May 1, 1933, P. L. 103, art. IV, sec. 402, as amended, 53 PS §65402, and each alleged statement, in referring to the board being split three to two upon the question therein referred to as being before the board, inferentially establishes the membership of the Middletown Township Board as five in number. Plaintiff was, therefore, a member of a sufficiently small identifiable group to fall within the principle enunciated in Farrel and Krupa.

The complaint adequately asserts the inducement or extrinsic circumstances and the background for the statements, the colloquium or connection of the publications to plaintiff, and the innuendo or interpretation of the words used.

It may be, as defendant argued in his preliminary objections, that his barbs were directed at another public official and not at the plaintiff. If the publications are not privileged this avails him nothing.

". . . It is not the intention of the speaker or writer, or the understanding of any particular hearer or reader, that is to determine the actionable quality of the words. It is rather the effect which the language complained of was fairly calculated to produce and would naturally produce upon the minds of persons of ordinary understanding, discretion and candor (citing cases) : Good v. Grit Publishing Co., 36 Pa. Superior Ct. 238 at p. 255.

". . . The test of . . . liability in a civil action is not what was his (defendant's) secret intent, but what is the meaning of his words"; Goebeler v. Wilhelm, 17 Pa. Superior Ct. 432 (parenthesis supplied) : Garvin v. Mercur, 68 Pa. Superior Ct. 1, 11

"That a publication is susceptible of an interpretation which would render it innocuous does not conclusively

defeat a right of action for libel." Boyer v. Pitt Publishing Company, 324 Pa. 154, 157. See also Restatement, Torts, §580.

The question of defendant's privilege must await determination at a later stage of this litigation. In McIntyre v. Weinert, 195 Pa. 52, 57 (1900), it was held that the question of qualified privilege cannot be determined on demurrer. See also Turner v. The Intelligencer Co., 17 D. & C. 2d 236, (1959), Ruppin v. Bangert, 58 Lanc. 95 (1962), held that privilege is an affirmative defense and, under Pa. R. C. P. 1030, cannot be raised by preliminary objection. On the other hand, although Pa. R. C. P. 1045 requires the defenses of "privilege, qualified privilege, fair comment . . . shall be pleaded under . . . 'New Matter,'" in Montgomery v. Philadelphia, 392 Pa. 178 (1958) a demurrer based upon absolute privilege was sustained. In Biggans v. Foglietta, 403 Pa. 510, the question of absolute privilege was raised and disposed of upon preliminary objections. But in those two cases the propriety of raising privilege by preliminary objection does not appear to have been questioned, as it is here.

Plaintiff, relying upon the following from Matson v. Margiotti, 371 Pa. 188:

". . . *Absolute privilege,* as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it sometimes expressed, within his jurisdiction . . . .*"

argues that (1) defendant was not a high public official at the time of the publications, and (2) the pleadings do not reveal facts and circumstances which indicate the alleged defamatory statements were made in the course of defendant's duties or within the scope of his

authority or jurisdiction. We have no difficulty in arriving at the conclusion that a township supervisor is a high public official. See Montgomery v. Philadelphia, supra, and the decisions cited in the footnotes thereto. Although the publication of August 28, 1963, appears to have been made in the course of defendant's duties and within the scope of his authority as a supervisor and to pertain to grave and serious matters within his jurisdiction, we need not decide these questions now, for the circumstances of the publication of August 29, 1963, appear to be entirely different, accepting, as we must, the averments of the complaint to be true. In Biggans v. Foglietta, supra, our Supreme Court reversed the lower court which, on preliminary objections, held to be absolutely privileged a publication made by a city councilman, not on the floor of council, but "through" a political headquarters. The publication of August 28, 1963, is under the heading "From: Bucks County Democratic Committee." The facts as pleaded in the instant case so approximate those in Biggans v. Foglietta that we must overrule the demurrer, leaving the determination of the privileged feature of both publications to a later stage of this litigation.

In support of his motion for a more specific pleading, defendant preliminarily objects as follows:

"The complaint should specify: (a) which words in the allegedly libelous statements constitute a libel and explain how these words were libelous; (b) what is meant by the allegation in paragraph 8 that the defendant distributed, or caused to be distributed to three or more reporters the allegedly libelous statement intending that said reporters print the aforesaid words in their respective publications; (c) what is meant by the allegation in paragraph 10 that the defendant did make and publish of and concerning the plaintiff the alleged libel and caused the said words to be mimeo-

graphed and distributed by his agents, servants, employees and others acting in concert with him."

We have neither found nor have we been presented with authority to sustain defendant's position that plaintiff must plead specifically which words of the publications are defamatory. In our opinion defendant's position is unsound. In Klumph v. Dunn, 66 Pa. 141 at page 144, it is stated:

". . . It is true that a general judgment in slander, where some of the counts set out words which are not actionable, is erroneous; but *non sequitur* that a count in which non-actionable words are laid with those which are actionable is therefore bad. All the words spoken at the time may properly be stated and given in evidence; for they explain and show the *animus* of the principal charge."

See also Drebin v. Jewish World Publishing Company, 262 Pa. 169. Lumley v. Cameron, 47 Del. Co. 25, cited by defendant, does not support his position.

Were it not for defendant's brief, his motions (b) and (c) for a more specific complaint would be incomprehensible to us. From the brief we understand that defendant's objective is the obtaining of knowledge of the identity of the alleged agents, servants and employes of defendant and others acting in concert with him. There is merit in defendant's position. Since publication is an essential element of an action for defamation, and defendant's liability therefore must rest upon his intentional or negligent communication thereof to others: Restatement, Torts §577, it is proper that the complaint apprise him of the identity of those whose acts, in distributing the allegedly defamatory writings, plaintiff seeks to charge to him and have him answer for.

We agree with defendant that paragraph 20 of the complaint must be stricken. It pleads hearsay evidence and has no proper place in this pleading.

## Order

And now, November 6, 1964, in accordance with the foregoing opinion, defendant's preliminary objections, nos. 1, in its entirety, 2(a), and 4, are overruled and dismissed. Defendant's preliminary objections nos. 2(b) and (c), and 3, are sustained, with leave, however, to plaintiff to file an amended complaint within 20 days from the date hereof.