## Duh v. The Bethlehem's Globe Publishing Company (No. 2)

*Philip J. Gahagan,* for plaintiff.
*Michael E. Riskin,* for defendant.

GRIFO, J., October 27, 1969.—This action is before us on defendant's preliminary objections in form of a demurrer to plaintiff's complaint. Defendant thereby admits the truth of every well-pleaded material and

relevant fact and every inference fairly deductible from the facts so pleaded. The pleadings reveal the following facts.

On Friday, December 6, 1968, defendant published an article in the "Bethlehem Globe-Times" which described an accident that involved plaintiff and a Mr. Smolinski. The story reported that plaintiff's car had struck Mr. Smolinski's car in the rear around 2:30 a.m. on December 6, 1969, and that plaintiff had fled from the scene, only to be apprehended a few blocks away. Plaintiff was then charged with leaving the scene of an accident and posted $300 bail. The article was taken from the police report filed on the accident, but the reporter had transposed the names of the parties. Plaintiff had, in fact, been the injured party, and Smolinski the fleeing party.

Plaintiff on January 24, 1969, instituted an action in trespass for libel against defendant publishing company. On January 28, 1969, a second article published by defendant in the "Bethlehem Globe-Times" appeared, and it is this article which is the subject matter of this second libel suit filed by plaintiff. The article is as follows:

"NEWSPAPER NAMED IN $10,000 SUIT

"An Easton man has filed a $10,000 civil lawsuit in Northampton County Courthouse against the Bethlehem Globe-Times over a news story about an auto accident on Dec. 6.

"The lawsuit was started by Frank Duh, 1301 Whitney Ave. Papers were filed by his attorney, Philip Gahagan.

"The story quoted police accounts of an accident which occurred on Pembroke Rd. near Fritz Dr.

"Duh, in his suit, charged that the story was 'wholly false' and 'injured his good name and reputation.' "

Plaintiff maintains that this above-quoted article is libelous because defendant published it "willfully, deliberately, and maliciously" for the purpose of adding credence to the first article by falsely stating that the original story was based on police accounts of the accident.

Libel may be defined as any malicious publication, written, printed or painted, which by words or signs, tends to expose a person to ridicule, contempt, hatred or degradation of character; or if it tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him: Richwine v. Pittsburgh Courier Publishing Co., 186 Pa. Superior Ct. 644, 646, 142 A.2d 416 (1958); Birl v. Philadelphia Electric Co., 402 Pa. 297, 167 A. 2d 472 (1960); Mengel v. Reading Eagle Company, 241 Pa. 367, 88 Atl. 660, (1913).

In general, libelous words may be divided into two classes: those which are libelous per se, that is, words which on their face and without the aid of extrinsic proof are recognized as injurious; and those which are libelous per quod, that is, words which are actionable in the consequence of extrinsic facts showing circumstances under which they were said or the damages resulting to the libeled party therefrom. Where the words used are actionable per se, no special damages need be alleged because the law presumes general damages which are the natural or probable consequences of defendant's act. Libel per quod requires special damages to be pleaded and does not presume general damages.

To be actionable per se, defamatory words generally must either impute the commision of a crime involving moral turpitude for which the party might be indicted and punished (see Williams v. Kroger Grocery & Baking Company, 337 Pa. 17, 10 A.2d 8, (1940);

Drebin v. Jewish World Publishing Company 262 Pa. 169, 105 Atl. 58, (1918)), or tend to injure one in his profession, trade or business, or in his office or employment: Bausewine v. Norristown Herald, Inc., 351 Pa. 634, 41 A.2d 736, (1945); Will v. Press Publishing Co., 309 Pa. 539, 164 A.2d 621 (1932).

In the case at bar the words alleged to be libelous are not libelous on their face because there is nothing which imputes the commission of a crime involving moral turpitude, nor would such words on their face tend to injure plaintiff in his profession, trade or business. The article taken as a whole explains that a suit in libel had been instituted by plaintiff against the Bethlehem Globe-Times because of a story published by them on December 6, 1968, concerning an auto accident, and that the story had quoted police accounts of the accident. This article does not come within the class of words which are actionable per se.

It must now be determined whether or not the article was libelous per quod. In a libel per quod, an explanation by plaintiff is necessary to explain how the statement is defamatory to him: Volomino v. Messenger Publishing Co., 410 Pa. 611, 189 A.2d 873 (1963); Mumma v. Pomeroy's Inc., 38 D. & C. 2d 594, 598 (1965). This interpretation by plaintiff is pleaded by an innuendo.

The purpose of an innuendo is to define the defamatory meaning which plaintiff attaches to the words, to show how they have come to have that meaning, and how they relate to plaintiff: Cosgrove Studio and Camera Shop, Inc. v. Pane, 408 Pa. 314 (1962). An innuendo cannot be used to introduce new material, nor to expand the natural meaning of words in order to give the language a construction that it will not bear: Sarkees v. Warner-West Corporation, 349 Pa. 365, 37 A.2d 544 (1944); McAndrew v. Scranton Republican Publishing Company, 364 Pa.

504, 511, 72 A.2d 780 (1950); Mumma v. Pomeroy's, Inc., supra at 598.

Plaintiff in his complaint alleges that the article, because it was wholly false, was injurious to his reputation. But nowhere in his complaint does plaintiff allege what injury he suffered as a result of the publication of this article. Thus, plaintiff has failed to plead an essential element of such cause of action as plaintiff may have for a libel per quod. It would be impossible to defend an action in libel per quod unless plaintiff avers the necessary specific interpretation put upon the words of defendant. Ingenuity is not to be resorted to by the court in order to ascribe to the words an import which is not naturally and fairly within their scope. Plaintiff must by innuendo plead their special meaning. There is no innuendo pleaded in this complaint and this makes it defective.

Furthermore, where an action is brought in libel and it is determined that the words are not libelous per se, the complaint must aver special damages: Bogash v. Elkins, 405 Pa. 437, 176 A.2d 677 (1962); McDonald v. Lee, 246 Pa. 253, 92 Atl. 135 (1914). Special damages are such as have actually been incurred as a natural result of the alleged wrong and must be computable in money: McDonald v. Lee, supra. Plaintiff has not pleaded special damages in this case.

Under all of the circumstances and in accordance with the above opinion, we conclude that the demurrer must be sustained.

## ORDER OF COURT

And now, to wit, October 27, 1969, in accordance with the foregoing opinion, the preliminary objections of defendant in the form of a demurrer to plaintiff's complaint are granted and the complaint is dismissed.