## Rubino v. Cadmus

*Lamb, Windle & McErlane,* for plaintiff.

*Fred T. Cadmus, 3rd; Dallett Hemphill; William L. Cremers, Jr.; John J. Duffy; Arthur A. Moorshead; William J. C. O'Donnall* and *William H. Mitman,* for defendants.

MARRONE, J., November 30, 1970.—Plaintiff in this case has instituted an action in trespass charging defendants with libel. Following the filing of preliminary objections to the original complaint, an amended complaint was filed, to which amended complaint all defendants again filed preliminary objections.

Plaintiff, Theodore S. A. Rubino, is an elected Commissioner of the County of Chester and at the time of the alleged libel and continuing to the time of suit was functioning in that capacity. The complaint alleges further that at the times in question plaintiff was also serving as the chairman of the Chester County Republican Committee and, at some time in the past, had served as sheriff of the county.

It is averred that the alleged libelous statements appeared in various newspapers of general circulation in the county under dates of October 25, October 30 and October 31, 1968, in addition to having been distributed by at least one of defendants at various locations in the county from October 25 through November 11, 1968.

While the reasons set forth for the sustaining of the preliminary objections are numerous (one defendant cites 36 separate reasons why a demurrer should be sustained) the preliminary objections in the nature of a demurrer by most of the defendants are based substantially on the grounds that under the rule of New York Times Co. v. Sullivan, 376 U. S. 254 (1964), plaintiff does not state a cause of action and further that the language complained of as libelous is not so as a matter of law. An additional attack on the sufficiency of the complaint is by way of a motion for a more specific pleading.

Attached to the complaint as exhibit A is a page out of the Daily Local News, a newspaper published in the Borough of West Chester, which depicts the publication on which plaintiff bases his claim. An examination of that exhibit shows "$731,800.00 PAYOFF!" underneath which appears an aerial photo of land allegedly owned by plaintiff. Under the said photograph follows an account containing the language complained of as being libelous as well as a photostatic copy of a check of the Commonwealth of Pennsylvania to the order of plaintiff in the sum of $731,800. There follows an appeal to vote for certain candidates, the last names of which are listed and which correspond with the last names of five of the defendants here with the names of Albert M. Greenfield, Jr. and John McNeil listed as chairman and treasurer of the Chester County Democratic Committee.

The present matter comes before us by way of preliminary objections. Accordingly, this court must accept as true all of the facts or allegations in plaintiff's complaint. In determining whether or not this case is controlled by New York Times Co. v. Sullivan, supra, which the defendants claim is applicable since the alleged defamation is that of a public official, it is

important that we bear in mind that at this stage of the proceeding all that is before us is plaintiff's complaint and, as indicated above, all factual allegations are to be accepted as true.

There is no doubt that the Times case has broadened the concept and meaning of freedom of speech and of the press and has greatly narrowed the meaning of libel when applied to a public official or candidate for a public office. However, the case does not stand for the proposition that at no time can a public official file suit and recover on the theory that he has been libeled. On the contrary, as has been substantiated in many cases decided since the Times decision, the holding of that case is that a State cannot award damages to a public official for defamatory remarks relating to his official conduct unless he proves "actual malice," that is, that the statement was made with knowledge of its falsity or reckless disregard of whether it was true or false: Kernick v. Dardanell Press, 428 Pa. 288 (1967). In Rosenblat v. Baer, 383 U. S. 75, 86 S. Ct. 669, 15 L. Ed. 2d 597 (1966), the United States Supreme Court did not foreclose a suit by a public official under the New York Times decision since the record disclosed that he might be able to present a jury question of malice as there defined.

As was well stated by Mr. Justice Fortas in his dissenting opinion in St. Amant v. Thompson, 390 U. S. 727, 734, 88 S. Ct. 1323 (1968): "The First Amendment does not require that we license shotgun attacks on public officials in virtually unlimited open season. The occupation of public officeholder does not forfeit one's membership in the human race." Other cases examined by this court indicate pretrial depositions or other methods of discovery on which the courts have based a finding of lack of actual malice. Under our rules of procedure, we may consider only those pleadings before us in deciding this question.

We are persuaded further by the statement of Mr. Justice Roberts in his concurring opinion in Kernick, supra, where he states that Times v. Sullivan, while it requires a plaintiff to prove that the libel was perpetrated with actual malice, made no change in our substantive law as to what statements constitute libel, but was merely directed to plaintiff's burden of proof in cases involving alleged defamation of a public official. He then sets forth that a paragraph of the complaint filed in that case, i.e., ". . . all charges made by the defendants in and by said writing made against the plaintiff are false and all defendants well knew said charges to be untrue when made, . . ." satisfied the Times requirement of an averment of actual malice and, if proven at trial, would sustain a recovery. The complaint in the instant case sets forth with sufficient particularity the charges that defendants knew or should have known that the statements and statements by implication referred to were false and that defendants made publication of the said statements and statements by implication with knowledge that the same were false or with reckless disregard as to whether or not they were false. These averments are substantially in the language which the court in the Times case indicated were matters which must be proved at trial before a public official could recover and that approved by Mr. Justice Roberts. Taking these allegations as true, as we must do at this stage of the proceedings, we hold that the requirement of actual malice set forth in Times is satisfied by the pleadings.

The next major avenue of attack in the preliminary objections of defendants is that the publication is not libelous as a matter of law. In Pennsylvania, it is for the court to say as a matter of law whether the writings in suit are capable of a libelous meaning. If they are, it then becomes the jury's duty to determine they

have such meaning in fact: Bausewine v. Norristown Herald, Inc., 351 Pa. 634 (1945); Restatement, Torts §614(1). It is the court's duty to examine the language in question here to determine whether it is actionable.

A libel is a maliciously written or printed publication which tends to blacken a person's reputation, or to expose him to public hatred, contempt or ridicule, or to injure him in his profession or business: Volomino v. Messenger Publishing Company, 410 Pa. 611 (1963).

The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express: Restatement, Torts §563. The comments to the aforesaid section of the Restatement state that if the maker of the communication intends to defame the other and the person to whom it is made so understands it, the meaning so intended and understood is to be attached thereto. This is so, although the meaning is so subtly expressed that the ordinary person would not recognize it. It is a question of whether the communication is reasonably understood in a defamatory sense by the recipient. If so, whether the defamatory implication is made by innuendo, by figure of speech, by expressions of belief, by allusion, or by irony or satire, is immaterial: Restatement, Torts, §563. Furthermore, in determining the meaning of a communication, words are to be construed together with their context. The context of a defamatory imputation includes all parts of the communication which are ordinarily heard or read with it. An example given in the Restatement is that a newspaper article is ordinarily not the context of the headline, although it may explain or qualify a defamatory imputation conveyed when the headline alone is read. This is so because the public frequently reads only the headlines of a news-

paper or reads the article itself so hastily or imperfectly as not to realize the full significance thereof.

In the instant case, the heading of the publication consists of one-inch bold type reciting "$731,800.00 PAYOFF!". Most of the body of the ad is in type of one-sixteenth of an inch.

What did the recipients correctly or mistakenly but reasonably understand by the term "payoff"?

This court is well aware of the many dictionary meanings of the term "payoff." However, the term is used frequently to add to the dictionary definition the element or implication of a reward, often unmerited. Obviously, "payoff" has a more offensive connotation than the synonymous terms "compensation," "recompense" or just plain "payment." As a matter of fact, even our Superior Court has recognized the more offensive connotation of the term in Commonwealth v. McCoy, 209 Pa. Superior Ct. 399 (1967), at page 405, where, in discussing an alleged embezzlement the Superior Court said that . . . "the defendant was not present when the *payoff* was discussed or . . ."

Employing the aforementioned section of the Restatement and the comments thereto, taking into account all the circumstances under which the publication was made, we find that the words complained of are capable of a defamatory meaning. A recipient could reasonably understand that plaintiff was paid by the Commonwealth not on the basis of the value of the land but rather because of his position, and to the detriment of the taxpaying public.

An additional matter needs to be discussed, i.e., the statement that plaintiff, while sheriff, purchased land at a sheriff's sale. It has long been held in Pennsylvania that a sheriff may not purchase directly or indirectly at a judicial sale unless he has the debtor's consent. This is so because as a sheriff he occupies the same

position of any other trustee: Jackson v. McGinness, 14 Pa. 331 (1850); Devine's Appeal, 30 Pa. 348 (1858); 21 P. L. Encyc. Judicial Sales, §22, footnote 32. A sheriff at a sheriff's sale is the agent of the law. As a trustee of the goods, he is bound by the same duties as any other trustee. A publication which on its face accuses him of a breach of that trust is actionable. This is so even if he has ceased to be the incumbent of the office: Restatement, Torts §569, comment e.

The Restatement, Torts §573, makes defamatory a publication "which ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, profession, or of his public office . . ." The publication here involved, at least from the allegations in the complaint, do ascribe such conduct on the part of plaintiff which may be incompatible with his proper conduct as a public official. As such, the publication is capable of a defamatory meaning.

Turning now to the preliminary objections of several of defendants in the nature of a motion for a more specific complaint, we say only that we find no merit in any of those contentions. The complaint does state with specificity a cause of action against all defendants. Again, whether or not the allegations can be proven as to some of them is not for the court at this juncture.

Nor are we persuaded by the argument that the complaint fails to plead special damages. The language employed in the advertising is capable of a defamatory meaning because it attributes to a public official conduct incompatible with his official duties, if not expressly, at least by innuendo. Accordingly, there is no need for plaintiff to plead special damages. See Restatement, Torts §569, Tentative Draft No. 12.

In summary, having examined carefully each of the reasons on which defendants rely in asking that the complaint be dismissed, we find the objections to be without merit.

ORDER

And now, November 30, 1970, the preliminary objections of all defendants are hereby dismissed. Defendants shall have 20 days in which to file responsive pleadings.