**Huber v. Palm**

*J. M. Maurizi,* for plaintiff.
*Frank J. Lucchino,* for defendants.

GILMORE, *J.,* September 11, 1985—Plaintiff, a union organizer for Local 23 of the United Food and Commercial Workers, brought this action for defamation against defendants' Local 14744/District 15 of the United Steelworkers of America and two of its directors. This matter is before the court on defendants' preliminary objections in the nature of a demurrer.

To determine the propriety of sustaining preliminary objections in the nature of a demurrer, we must accept as true all well-pleaded averments of fact. BATA v. Central-Penn National Bank, 423, Pa. 373, 224 A.2d 174 (1966), cert. denied 386 US 1007, 87 S. Ct. 1348, 18 L.Ed. 2d. 433 (1967).

Viewed in this fashion, the complaint discloses the following facts. Plaintiff and defendants are involved in a union representation election for the right to represent food store workers in certain area supermarkets. During the course of the election, defendant published and distributed circulars which contained the usual campaign rhetoric. Found within the circulars was the following information which is the subject of plaintiff's complaint:

"Local 23 let Economy Markets in Beaver get rid of over 300 high paid employees in June of 1984. Local 23 then permitted the employers to reopen with all minimum-wage workers. The employers were actually the same people that owned Economy Markets and Local 23 let them reopen as Economy Foodland at the expense of the older workers. This is the plain truth.

"Local 23 let four Shop 'N Save Markets close in the Beaver Valley to get rid of their high-paid workers in June of 1984 . . . . . .

"The USWA isn't trying to build a political campaign so that one person can run for office, like Carl Huber is trying to do at Local 23 at the expense of the workers. All he cares about is getting elected to office and not the realistic needs of the people. He is the same person who cost over 500 people their jobs in the Beaver Valley."

Plaintiff alleges that as a result of these publications he has suffered damages to his reputation and good character. Defendants respond that as a matter of law the statements made in the circulars are incapable of defamatory meaning.

The issue of whether or not a writing is fairly or reasonably capable of being found libelous is a question of law for the court. Kernick v. Dardanell Press, 428 Pa. 288, 236 A.2d 191 (1967). If the alleged defamation is determined not to be so capable of a defamatory meaning as a matter of law, then the case will be terminated prior to its going to the factfinder. Doman v. Rosner, 246 Pa. Super. 616, 371 A.2d 1002 (1977).

The definition of defamation is:

". . . .[a statement that] tends to do harm to the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." See Cosgrove Studio and Camera Shop, Inc. v. Pane, 408 Pa. 314, 182 A.2d 751 (1962).

Our Supreme Court has further provided that, while a statement may be personally annoying or embarrassing, annoyance does not constitute defamation and that to be capable of defamatory meaning a statement must impart the kind of harm that "grievously fractures plaintiff's standing in the

community of respectable society." Scott-Taylor, Inc. v. Stokes, 425 Pa. 426, 229 A.2d. 733 (1967).

Providing valuable guidance for our determination in this matter the Restatements, (Second) Torts, §566, comment c., states:

"a simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is."

Were this the end of the inquiry, this court might find that the contents of the publication meet the minimum test described above and the case allowed to proceed. The United States Supreme Court has, however, placed a higher standard upon alleged defamatory utterances in a union election situation. Because of basic First Amendment rights and to accomodate the public's interest in encouraging free debate on the issue, there is a much higher standard of proof. Linn v. Plant Guard Workers, 383 US 53, 86 S. Ct. 657, 15 L. Ed. 2d. 582 (1966); Letter Carriers v. Austin, 418 US 264, 94 S. Ct. 2770, 41 L. Ed. 2d. 745 (1974).

Following this line of thought the court in Redding v. Carlton, 223 Pa. Super. 136, 296 A.2d 880 (1982), cautioned that a publication is not capable of defamatory meaning where its meaning is "no more than rhetorical hyperbole or a vigorous epithet." In Redding, defendants' statements that the town supervisor's role evidenced a conflict of interest "at the very least, and perhaps much more" were characterized by the court as rhetorical hyperbole common to American politics and therefore not capable of defamatory meaning.

We agree with the rationale of Redding and believe it is equally applicable to the corresponding arguments raised by plaintiff with respect to the al-

leged libel. It is difficult to believe that the readers of these circulars would construe them as more than rhetorical hyperbole used by a competing union in a vigorous struggle for the right to represent a group of food store workers. A reading of these circulars in their entirety would disclose to any reasonable person that defendants had stated nothing more than their opinion that plaintiff and his union would not provide as good representation as defendants.

This court finds therefore that the language of the circulars in this case is not capable of communicating a defamatory meaning and could not reasonably have been interpreted in context to be defamatory.

## ORDER

And now, this September 11, 1985, defendants' demurrer to plaintiff's complaint in trespass is sustained and the complaint is dismissed with prejudice.