## Bogash, Appellant, v. Elkins.

Argued December 4, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Albert H. Friedman,* with him *Norman P. Zarwin,* for appellant.

*Louis G. Hill,* with him *Bruce W. Kauffman,* and *Dilworth, Paxson, Kalish, Kohn & Dilks,* for Benjamin B. Ominsky, appellee.

*S. Gordon Elkins,* with him *Stradley, Ronon, Stevens & Young,* for Louis Elkins, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, January 2, 1962:

Plaintiff filed a complaint in trespass for libel. From the Order sustaining defendant's preliminary objections and dismissing the complaint, plaintiff took this appeal.

Plaintiff is the editor of the "P.A.R.D. Bulletin", the official publication of the Philadelphia Association of Retail Druggists. Defendant Elkins wrote an article, with the knowledge and approval of defendant Ominsky, which was published in the February, 1960 edition of "Pharmacy Speaks". Plaintiff charged that the following paragraphs in the article libeled him. "Mr. Hyman C. Bogash, Secretary of P.A.R.D. . . . stalled and maneuvered . . . and finally got the P.A.R.D. Executive Committee to withdraw the promised cooperation. As a result I could not use the P.A.R.D. Emblem or its Bulletin. Something of great value and due the members was denied YOU because of one individual, Mr. Bogash."

In the April-May 1960 edition of "Pharmacy Speaks" Elkins wrote "Mr. Bogash felt impelled at this

point, to offer his opinion that the druggist would not cooperate. The net result was that it [the program presented to the pharmacists entitled 'Today's Prescription is the BIGGEST BARGAIN IN HISTORY'] was tabled without due consideration for the merit of the program. What is worse: is that anything this man says or does is sufficient to put the kiss of death on anything presented, unless he places his stamp of approval. It is a matter of men, not daring to raise their voices, lest they find disfavor with him."

Plaintiff contends that the aforesaid articles were false and malicious and intended to bring him into disrepute and contempt among the members of P.A.R.D. and those to whom "Pharmacy Speaks" circulates, and also to the community in general and lowered his reputation by holding him up to scorn, contempt, humiliation and embarrassment without reasonable cause.

Preliminary objections admit all facts which are well pleaded, but not the pleader's conclusions or averments of law: *Ross v. Metropolitan Life Insurance Co.*, 403 Pa. 135, 169 A. 2d 74; *Gardner v. Allegheny County*, 382 Pa. 88, 114 A. 2d 491; *Narehood v. Pearson*, 374 Pa. 299, 96 A. 2d 895.

Freedom of speech is one of the most prized rights of every American but it is not absolute. ". . . every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty:" Article I, Section 7 of the Constitution of Pennsylvania. A libel is a malicious publication, expressed either in printing or writing, or by signs and pictures, which tends to blacken a person's reputation and expose him to public hatred, contempt, or ridicule, or injure him in his business, trade or profession: *Sarkees v. Warner-West Corp.*, 349 Pa. 365, 37 A. 2d 544; *Collins v. Dispatch Publishing Co.*, 152 Pa. 187, 25 A. 546; *Schnabel v. Meredith*, 378 Pa. 609, 107 A. 2d 860; *Mengel v. Reading Eagle Co.*, 241 Pa. 367, 88 A. 660.

The question of whether the language used in the allegedly defamatory article can fairly and reasonably be construed to have the libelous meaning ascribed to it by plaintiff is in the first instance a matter of law for the Court: *Mengel v. Reading Eagle Co.*, 241 Pa., supra; *McDonald v. Lee*, 246 Pa. 253, 92 A. 135; *Sarkees v. Warner-West Corp.*, 349 Pa., supra; *Naulty v. Bulletin Co.*, 206 Pa. 128, 55 A. 862.

"It was the duty of the court to determine whether or not the words used were libelous per se. If they were not then in the absence of averment of special damage, binding instructions were proper:" *McDonald v. Lee*, 246 Pa., supra (page 255).

In *Mengel v. Reading Eagle Co.*, 241 Pa., supra, the Court said (pages 370-371) : "Written or printed words injurious to one in his business, calling, trade or profession are libelous; and if, standing alone, 'the common understanding of mankind takes hold of the published words, and at once, without difficulty or doubt, applies a libelous meaning to them,' they are to be so construed as a matter of law: Hayes v. Press Company, 127 Pa. 642. If words are not in themselves libelous, but are averred to be so by innuendo, it is for the court in civil cases to instruct the jury as to whether they are libelous, assuming the innuendo to be true: Pittock v. O'Niell, 63 Pa. 253; Collins v. Dispatch Publishing Company, 152 Pa. 187; . . ."

"If the publication complained of is not in fact libelous, it cannot be made so by an innuendo which puts an unfair and forced construction on the interpretation of the publication:" *Sarkees v. Warner-West Corp.*, 349 Pa., supra (page 369).

Statements which represent differences of opinion or are annoying or embarrassing, are, without more, not libelous. As Judge REIMEL aptly said:

"The meaning of the words of the articles must be enlarged and expanded beyond a reasonable interpreta-

tion before it can be said that the article and letter are libelous. A careful reading of the articles discloses the expression of opinion by the author and portrays disappointment that his programs were not accepted by the Philadelphia Association of Retail Druggists. The articles either construed separately or together do not expose the plaintiff to ridicule, contempt, hatred, or degrade his character. Mr. Bogash's feelings may have been hurt, but he has not been defamed and therefore he does not have a cause of action."

Order affirmed.