## O'Neill v. Motor Transport Labor Relations, Inc.

*Edward B. Bergman*, for plaintiffs.

*George P. Williams, 3rd*, for defendants.

HAGAN, P. J., October 14, 1966. — This matter is before us upon the preliminary objections of defendants, Motor Transport Labor Relations, Inc. (hereinafter referred to as "M.T.L.R.") and Joseph McCann (hereinafter referred to as "McCann") to plaintiffs' complaint in trespass for libel. For the purposes of deciding the preliminary objections, we must, of course, accept all of the well pleaded averments in the complaint as being true. The complaint avers substantially as follows:

There are 124 plaintiffs, all of whom were former employes of defendant Roadway Express, Inc. (hereinafter referred to as "Roadway"). M.T.L.R. is in the business of negotiating labor relations agreements on behalf of employers in the motor freight industry in their dealings with labor unions representing employes. McCann is the executive director of M.T.L.R. A dispute arose between plaintiffs and Roadway, and plaintiffs were joined in a work stoppage by employes of other motor freight companies in the Philadelphia area covered by the same collective bargaining agreement. In connection with the work stoppage, isolated acts of violence occurred, none of which were caused or participated in by plaintiffs. The employes of the other companies then returned to work, but plaintiffs refused to return to work for Roadway because of a continuing dispute between them and Roadway. Plaintiffs were then forced to seek employment with other

motor freight terminals, and Roadway sought to prevent plaintiffs from doing so, in order to force plaintiffs to return to work for Roadway under Roadway's terms and conditions. At this juncture, M.T.L.R., at the request of Roadway, circulated a four page document among the other motor freight companies in the area, some of which were not represented by M.T.L.R. It is this document which plaintiffs claim to be libelous under the circumstances under which it was circulated.

One page of the document consisted of photocopies of two newspaper articles which had appeared in Philadelphia newspapers, and the other three pages consisted of a list of the 124 employes of Roadway who are plaintiffs herein. The document indicated that it was a memo from McCann, the executive director of M.T.L. R. One of the newspaper articles bore the caption: "Trucking Firms Are Bombed In Labor Dispute", with the subcaption: "Molotov Cocktails Set Off Blazes; Suspects Chased"; and the other newspaper article bore the caption "2 In Car Cut By Stones; 4 Pickets Held". The text of the articles referred to a dispute between Roadway and its employes and to various acts of violence committed in connection therewith.

Defendants' primary argument is based upon the so-called "group libel" doctrine; that is, defendants urge that plaintiffs constitute such a large group that a statement defamatory of the group cannot be reasonably understood as casting a reflection upon the individual reputation of any member of the group. In support of their contention, defendants rely upon Farrell v. Triangle Publications, Inc., 399 Pa. 102, the leading Pennsylvania case on the subject.

In the Farrell case, a newspaper printed a defamatory article about "a number of Township Commissioners". There were, in fact, 13 township commissioners, and suit was instituted by one of them against the

newspaper for libel. The lower court sustained a demurrer to the complaint, and the Supreme Court reversed, holding that plaintiff was sufficiently identified to the public so as to have been impugned by the article.

The Supreme Court, in the Farrell case, enunciated certain principles which guide us in determining the preliminary objections presently before us. At pages 104-05, the court stated:

"Where a defamatory publication or utterance is directed toward a class or group whose membership is so numerous that no one individual member can reasonably be deemed an intended object of the defamatory matter, no cause of action for libel or slander arises therefrom. For example, if someone should speak or write defamatorily of all of the members of one of the professions, such as the law, medicine or ministry, no particular lawyer, doctor or minister could maintain a personal action for the defamation for the reason that no one would be sufficiently identified as an object thereof to justifiably warrant a conclusion that his individual reputation had been substantially injured. Where, however, a defamatory publication or utterance is directed toward a comparatively small class or group all of whose constituent members may be readily identified and the recipients of the defamatory matter are likely to identify some, if not all, of them as intended objects of the defamation, an individual member of the group may sue for the damages done his reputation thereby".

Again, at page 106, the court in the Farrell case stated:

". . . if it is clear that, because of the large number in the group referred to in the printed matter, or for any other reason, a recipient of a defamatory publication could not reasonably conclude that it referred to the particular person claiming to have been libeled

thereby, the complaint should be dismissed for failure to state a cause of action. But, if the defamatory publication can reasonably be interpreted as referring to a particular complainant, whether recipients did so conclude is for a jury to determine".

From the foregoing, it is clear that group libel is not a mere matter of numbers, but to the contrary, is a question of adequate identification. If a defendant were to defame 500 individuals, each of whom was specifically named and identified, each of the 500 would undoubtedly have a cause of action for libel, since there could be no question but that each had been defamed.

So, too, in the instant case, each of the 124 plaintiffs was specifically named and, therefore, if the document in question is capable of being construed as defamatory, each plaintiff has been defamed; and the mere fact that 124 plaintiffs may have been defamed does not insulate defendants from liability.

Defendants have also urged upon the court the argument that, since the two newpaper articles in question do not name any of the plaintiffs, the articles are not capable of being construed as defamatory as to plaintiffs. The question before the court, however, is not whether the *newspaper articles* are capable of a defamatory construction, but whether the *document*, of which the newspaper articles were a part, is capable of such construction.

In this respect, it is significant that the newspaper articles, which refer to violence in connection with a work stoppage by employes of Roadway, together with the complete list of all Roadway employes, were sent to other prospective employers of plaintiffs. In this context, we find that the document in question can fairly and reasonably be construed as a warning by defendants to prospective employers not to employ plaintiffs because they are the type of persons who might engage in violent and illegal behavior. The doc-

ument, therefore, meets the criteria set forth in Bogash v. Elkins, 405 Pa. 437, 440.

For the foregoing reasons, the preliminary objections of defendants, Motor Transport Labor Relations, Inc., and Joseph McCann, are dismissed, with leave to file answers within 20 days.