Redding, Appellant, *v.* Carlton.

Argued September 12, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Roger B. Reynolds, Jr.,* for appellant.

*Jeffrey M. Stopford,* with him *Beasley, Hewson, Casey, Kraft & Colleran,* for appellees.

OPINION BY HOFFMAN, J., November 16, 1972:

Appellant contends that the trial court erred in this libel action by granting appellees' demurrer on the grounds that appellees' publications were not actionable per se in that they were not capable of a defamatory meaning.[1]

In late 1970, Perkiomen Township officials began discussing the purchase of the proposed site for the new township headquarters. During these discussions, appellant was both a township supervisor and the owner of property situated in the vicinity of the proposed site.

Appellees launched a campaign to prevent the purchase of the site. The campaign consisted of letter writing, newspaper advertising, circular distribution, and conversations with township officials. The appellees alleged that appellant's dual role as township supervisor and property owner constituted a "conflict of interests at the very least, and perhaps much more." The allegations charged that the appellant and another township official owned land adjoining the proposed site. In fact, appellant's land was located near, but not adjacent to the aforesaid site.

Remodeling costs for the proposed site were estimated at $5000. In a letter to the supervisors, appellees asserted that said estimate was deliberately misleading as remodeling costs would be far greater. The letter did not indicate the party responsibile for setting the estimate. A circular distributed publicly did charge the supervisors with estimating the remodeling costs,

---

[1] Traditionally, the phrase "actionable per se" has referred to words "which on their face and without the aid of extrinsic proof are recognized as injurious." 22 P.L.E. 226.

but the circular did not accuse the supervisors of deliberately misleading the public.

The lower court held that these publications were not capable of a defamatory meaning. Whether or not language can reasonably be construed as being defamatory is a matter of law. *Clark v. Allen,* 415 Pa. 484, 487, 204 A. 2d 42 (1964); *Kernick v. Dardanell,* 428 Pa. 288, 295, 236 A. 2d 191 (1967); *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 442, 273 A. 2d 899 (1971). Free speech would be endangered if innocuous statements were found capable of possessing a defamatory meaning. Thus, in deciding whether or not a publication is defamatory, courts should be guided by America's profound "commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement caustic and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Company v. Sullivan,* 376 U.S. 254, 270 (1964). The constitutionally protected area of free speech revolves around the freedom to criticize government and the officials responsible for government operations. *Rosenblatt v. Baer,* 383 U.S. 75, 85 (1966). To prevent a chilling effect on free speech, the Supreme Court of Pennsylvania has held that "statements which represent differences of opinion or are annoying or embarrassing, are without more not libelous." *Bogash v. Elkins,* 405 Pa. 437, 440, 176 A. 2d 677 (1962). Neither is a statement libelous which is "no more than rhetorical hyperbole" or "a vigorous epithet" used to describe what the publisher believes to be another's extremely unreasonable position. *Greenbelt Cooperative Publishing Ass'n. v. Bresler,* 398 U.S. 6, 14 (1970).[2]

---

[2] In *Greenbelt v. Bresler*, supra, a real estate developer owned two pieces of land. The developer hoped to secure a zoning variance on one piece. The Greenbelt city council wishes to purchase the

Appellees' allegation—"This is a conflict of interests at the very least, and perhaps much more"—is a truthful remark characterized by the type of rhetorical hyperbole common to American politics. Appellant's dual role as supervisor and landowner is clearly a conflict of interests. Such a conflict may prompt a decision not in the township's best interests, and such action would be criminal. A man confronted by a conflict of interests, however, can act honestly and impartially.[3]

In *Kernick v. Dardanell,* supra, a similar case, a township auditor accused a township commissioner of bribery. The township commissioners conducted an investigation and found: (1) The auditor's remarks were "carefully calculated to disparage the Township and its officials." (2) The auditor's "utterance cost the

---

other piece as the site for a school. During city council hearings on these negotiations, citizens accused the real estate developer of blackmailing the council in order to secure the zoning change. The Supreme Court found that this allegation was not capable of a defamatory meaning. "It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it was Bresler's [the developer's] public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging Bresler with the commission of a criminal offense. . . . the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely unreasonable. . . ." 398 U.S. at 14.

[3] *Rosenblatt v. Baers,* supra, is remarkably similar to the instant case. The newly appointed managers of a public ski resort produced greater cash returns than the former managers. In response to these returns, a newspaper article posed the following question: "What happened to all the money last year? and every other year?" In dicta, the court found that while such a publication could impliedly charge the old administration with peculation, the remarks might merely praise the new administrators. Thus, the newspaper column was held to contain no clearly actionable statement.

taxpayers money in order to conduct an investigation of her charges, 'even though they consistently turn out to be baseless.' " (3) The auditor's "peculiar actions in suppressing the facts were unexplained." and (4) "In the future, she should conduct herself in a manner befitting a public official." *Kernick v. Dardanell,* supra, 428 Pa. at 290-91. The findings of the township commissioners accused the auditor not only of malfeasance in office, but of obstructing justice by suppressing evidence. Mr. Justice MUSMANNO ruled that the commissioners in no way said that the auditor "had deviated from any implied code of propriety," for the publications "were factual and unencumbered by any demonstrated bias, . . . and were completely devoid of adjectival or adverbial description, comment or observation . . . ." *Kernick v. Dardanell,* supra, 428 Pa. at 296.

Appellees' comments with regard to appellant's conflict of interests are as factual and unencumbered by bias as the publications in *Kernick.* Only the appellees' assertion that appellant's property was adjacent rather than near the proposed site was a misstatement. Such a minor misstatement is analogous to the "rhetorical hyperbole" or "vigorous epithet" which is incapable of possessing a defamatory meaning. In addition, the allegation that someone—probably the township supervisors—had deliberately misled the public by grossly underestimating the remodeling costs is no more defamatory than the charge of "blackmail" was in *Greenbelt.*[4]

---

[4] More severe allegations than those involved herein were found to be incapable of possessing a defamatory meaning. For example, accusing a United States Senator of having communist voting tendencies is not defamation even though accusing a man of being a communist, or being a member of the communist party, or engaging in communist activities is libelous per se. *Clark v. Allen,* supra, 415 Pa. at 496. The communist witch-hunts of the 1950's demonstrate the

In the instant case, the allegations focus upon the factors motivating the appellant's actions. This subject is treated in *New York Times Company v. Sullivan,* supra, where the Supreme Court quoted approvingly from Judge EDGERTON'S opinion in *Sweeney v. Patterson,* 128 F. 2d 457 (D.C. 1942), cert. denied, 317 U.S. 678: "Cases which impose liability for erroneous reports of the political conduct of officials reflect the obsolete doctrine that the governed must not criticize their governors . . . . The interest of the public here outweighs the interest of appellant or any other individual. The protection of the public requires not merely discussion, but information. Political conduct and views which some respectable people approve, and others condemn, are constantly imputed to Congressmen. Errors of fact, *particularly in regard to a man's mental state and processes, are inevitable . . . . Whatever is added to the field of libel is taken from the field of free debate."* *New York Times Company v. Sullivan,* supra, 376 U.S. at 272 (Emphasis added). To hold that publications such as those in the instant case are capable of a defamatory meaning, this court would have to infringe upon "the field of free debate."

For the aforesaid reasons, the ruling of the lower court is affirmed.

---

severe consequences which accompany any accusation of communist tendencies, but "If freedom of the press or speech collides or conflicts with libel and there exists any substantial doubt on the question of which shall apply, the protection of our country is far more important than the protection of the reputation of a public official or a person in public life." *Clark v. Allen,* supra, 415 Pa. 496.