## Romick v. Plum Borough

*Robert E. Whitehill*, for plaintiff.
*Bruce E. Dice*, for defendants.

FLAHERTY, *J.*, June 28, 1978—The Council of the Borough of Plum enacted a resolution which provides, inter alia, as follows: "That all citizens, councilmen or other officers of the Borough shall be prohibited from the recording, or taping of Public

Council meetings by means of an electronic recording or taping device."

Plaintiff, a citizen of the Borough of Plum, was prohibited and restrained by the Borough of Plum from recording the proceedings of a public council meeting by the use of a silent tape recorder under the threat of criminal prosecution for "defiant trespass."

This court issued a preliminary injunction on June 5, 1978, enjoining the prohibition of the recording of public meetings and holding that forbidding the use of tape recording devices at borough council meetings constituted an unreasonable exercise of the municipality's police power.

A hearing has now been held and formal briefs filed. The testimony established that journalists customarily make use of the silent tape recorder as a tool in exercising the journalists' function of providing the public with information. The tape recorder was demonstrated, and it was, in fact, silent. A councilman testified that the use and presence of recording devices has an inhibiting effect on the borough council and constitutes a frustration of effective communication.

The Supreme Court of the United States has held in United States v. O'Brien, 391 U.S. 367, 377 (1968), that an exercise of the police power is justified if it meets four criteria: (1) the enactment is within the constitutional power of the government, (2) it furthers an important or substantial governmental interest, (3) the governmental interest is unrelated to the suppression of free expression, and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

In an open and democratic society, it is essential that the public be informed and that there be no restrictions on the sacred and fundamental rights of freedom of speech and freedom of the press as guaranteed to all by the First and Fourteenth Amendments to the United States Constitution and article I, sec. 7, of the Constitution of the Commonwealth of Pennsylvania. To the degree that any society is cloaked with secrecy in its government, so also does tyranny increase. Public participation in government is that which distinguishes our society from all others. It is inherent in the right of free discussion of governmental affairs that one has the right to communicate criticism of government to others: Redding v. Carlton, 223 Pa. Superior Ct. 136, 296 A. 2d 880 (1972). The denial of the right to take advantage of modern technology in accurately recording that which is open to the public is a denial of the right to criticize government and to communicate that criticism to others.

In Nevens v. The City of Chino et al., 44 Cal. Rptr. 50 (1965), the California court stated:

"The principle of the freedom of the press may be invoked by anyone in the country; it is not necessary that such person be an actual newspaper reporter. . . . [The] impact of the right sought to be enforced makes the contention important, for an unreasonable deprivation of the means to make an accurate record of what transpires in a public meeting would necessarily affect the accuracy and plenitude of newspaper reports. Suppose, for example, that the Chino City Council had attempted to prohibit the use of pen, or pencil and paper, at the sessions held by them; such a measure

would at once strike anyone as being an improper means of exerting official power, and the surprise and dissatisfaction generated by such an arbitrary rule would undoubtedly lead to a prohibition by the courts of such a foolish attempt to exercise governmental power. . . .

"Accuracy in reporting the transactions of a public governing body should never be penalized, particularly in a democracy, where truth is often said to be supreme. Governmental measures based upon police power should always be well-defined and reasonably exercised. And here reason is down-graded. If a shorthand record of such a meeting is more accurate than long hand notes, then the use of shorthand is to be approved [citation omitted]; and if the making of a tape record is a still better method of memorializing the acts of a public body it should be encouraged.

"As no one is harmed, the use of a silent tape recorder operated exclusively by the person interested in making such a record must be permitted."

The issue at hand was dealt with in Com. v. Swank, 72 D. & C. 2d 754 (1975), wherein it was stated at p. 757:

"But, surely, persons attending the meetings would have the right to take notes. The next step would be to inquire whether an attending person skilled in shorthand could pursue that skill. Is a tape recorder anything more than an advanced device toward the same end?

"Further, we do not perceive harm accompanying the use of a taping device at a supervisors' meet-

ing. The decorum requirements, although existent, are not of the same variety or to the same degree of those considered minimal in a courtroom. A judicial proceeding, where the role of the public is that of quiet observer and not participant, is clearly distinguishable. Nor, obviously, is there any property right in the proceedings before a public supervisors' meeting in contrast to a musical or dramatic performance wherein the law protects the performer against plagiarism.

"True, a tape may be misused, but that fact, one in common with every communication device since the alphabet, must not result in restricting its use. The freedom to misuse is the price of an open society, a small price indeed. We think that the subject ordinance is an example of unnecessary restriction, one that is arbitrary and unreasonable. It is invalid."

In Wilson v. Blake, 475 Pa. 627, 381 A. 2d 450 (1977), it was held that Rule 141 of the Pennsylvania Rules of Criminal Procedure permits mechanical or electronic recording of a preliminary hearing in a criminal matter. The court stated:

"Rule 141(c)(4) promotes important policies. Official stenographic records are not infallible. Transcription by means other than stenographic recording, or by a second stenographer, insures the defendant an accurate record. Moreover, a transcription made by the defendant is available to him immediately, unlike the official record which can require weeks or months to prepare and often can-

not be furnished to defense counsel until the eve of trial. Finally, the means allowed a defendant for recording preliminary hearings are both inexpensive and convenient. Their use deserves to be encouraged rather than deterred."

The court should tread very lightly in tampering with the public's right to know, free speech and freedom of the press. Rather than sanctioning an impediment in this area, the court should act to protect this valuable asset of the public. There should be a clear demonstration of reasons why a dissemination device should not be used to inform the public, and, in the case at bar, none exist.

The court reaffirms its preliminary decree that forbidding the use of tape recording devices at borough council meetings is an unreasonable exercise of a municipality's police power, and, therefore, unconstitutional.


## DECREE NISI


And now, June 28, 1978, after final hearing, argument and briefs submitted, for the reasons stated in the foregoing opinion, it is order, adjudged and decreed that a permanent injunction issue restraining and enjoining defendants from the prohibition of recording the public meetings of the Borough Council of the Borough of Plum by defendants and from the enforcement of resolution no. 82, paragraph (1) of the Borough of Plum.