510 A.2d 769

Cyril Harrison WECHT, M.D., J.D., Appellant,

v.

PG PUBLISHING COMPANY, a Pennsylvania Corporation d/b/a and t/a Pittsburgh Post Gazette, William Block and Paul Block, Jr., John G. Craig, Jr., Tim Menees, a/k/a Timenees, Chet Wade and Tom Hritz, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 29, 1986.

Filed May 30, 1986.

494

Sheldon L. Albert, Philadelphia, for appellant.

Walter T. McGough and John G. Ferreira, Pittsburgh, for appellees.

Before CIRILLO, President Judge, and BROSKY and JOHNSON, JJ.

CIRILLO, President Judge:

Appellant, Cyril Wecht, M.D., J.D., initiated this action in trespass against appellees, the Pittsburgh Post-Gazette, its publisher and various of its editors, agents and employees, alleging that appellees maliciously published a number of articles and editorial cartoons which were false, defamatory and portrayed Dr. Wecht in a false light. The trial court sustained appellees preliminary objections in the nature of a demurrer. The court held that the publications were not defamatory as a matter of law. Although the court found the publications objectionable to varying extents, it resolved that the publications failed to meet the threshold requirement of tending to harm Dr. Wecht. This appeal followed.

On appeal, Dr. Wecht submits that the trial court erred: 1) in finding the publications incapable of defamatory meaning; and 2) in sustaining appellees' preliminary objection to appellant's false light/invasion of privacy claim.

We find appellant's arguments in support of his first issue to be meritless. We agree with the trial court that the challenged publications are incapable of defamatory meaning but our decision to affirm on this issue is based upon different reasons than those advanced by the trial court. We may affirm a decision of the trial court when it is correct on any legal ground or theory without regard to the ground upon which the trial court relied. *Green v. Juneja*, 337 Pa.Super. 460, 487 A.2d 36 (1985); *Emerick v. Carson*, 325 Pa.Super. 308, 472 A.2d 1133 (1984); *Leasing Service Corp. v. Benson*, 317 Pa.Super. 439, 464 A.2d 402 (1983).

In determining that the published material in question was not defamatory, the trial court relied upon Dr. Wecht's position as an elected official and a well-known public figure. The court stated in its opinion that the "law of libel is alive and well, but that when a public figure sues under it, he carries a heavy burden, and the first is to show that the subject matter complained of is defamatory." The court continued that "in a careful review of the subject matter here complained of, we cannot find that it is, recognizing that the First Amendment guarantee of a free press, as interpreted by the United States Supreme Court, carries with it a *limited* privilege of free expression." (Emphasis added). The privilege to which the trial judge referred is a qualified one. It is accepted that absolute privileges may be raised at the preliminary objection stage, *Greenberg v. Aetna Insurance Co.*, 427 Pa. 511, 235 A.2d 576 (1967), *cert. denied*, 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1968). But, it is well established that the defense of qualified privilege must be raised by new matter and not by preliminary objection. *Vitteck v. Washington Broadcasting Co., Inc.*, 256 Pa.Super. 427, 389 A.2d 1197 (1978); *Burke v. Triangle Publications, Inc.*, 225 Pa.Super. 272, 302 A.2d 408 (1973). *See* Pa.R.C.P. 1030. The trial court erred in considering the qualified privilege extended to those commenting on the lives of public figures when ruling upon appellees' preliminary objections. However, we agree

with the trial court that the communications in question were not defamatory in that appellant's reputation in the community was not harmed.

To maintain his complaint in libel, Wecht was charged with establishing the defamatory nature of the challenged publications. In Pennsylvania

a communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.

Restatement (Second) of Torts § 559 (1977). *Accord Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983); *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (1980). It is the function of the court to determine whether a contested communication is capable of defamatory meaning. *Agriss v. Roadway Express*, 334 Pa.Super. 295, 483 A.2d 456 (1984). If the court concludes that the challenged publication is not capable of defamatory meaning, there is no basis for allowing the case to proceed to the jury.

In determining whether a publication is capable of defamatory meaning for purposes of deciding whether to dismiss a complaint alleging defamation upon preliminary objections in the nature of a demurrer, we must accept as true all well pleaded facts averred in the complaint, as well as all reasonable inferences arising therefrom. *Gordon v. Lancaster Osteopathic Hospital Association*, 340 Pa.Super. 253, 489 A.2d 1364 (1985). We will not dismiss a complaint under these circumstances unless it is clear that the publication is incapable of defamatory meaning. *Vitteck v. Washington Broadcasting Co. Inc., supra.* After a thorough review of the record and the applicable law, we conclude that the facts as pleaded by appellant-Wecht were insufficient to demonstrate the defamatory nature of the contested articles and cartoons. The trial court acted properly in sustaining appellees' preliminary objections to appellant's defamation claim. We hold that the communications as they appeared in the Pittsburgh Post-Gazette were incapable of defamatory meaning.

In the case *sub judice,* the controversy centers on three editorial cartoons, one satirical article and one news column published by the Pittsburgh Post-Gazette over an 11–month period. One cartoon, appearing on April 5, 1983, drafted by cartoonist Tim Minees, shows a sketch of two people on a field trip, one with a telescope looking at some type of creature with the caption: "He matches, Harriet! Listen: Cycoon—peculiar to Allegheny County; can be vocal, abusive and quarrelsome; found near democrats and morgues; considered bright but untrainable; often chases own tail." The following month the Pittsburgh Post-Gazette published a cartoon depicting four polling booth scenes with three white hand bags sitting outside three of the booths. The booth labelled "Wecht" had a black doctor's bag sitting next to it. Wecht's booth was surrounded by typewriter symbols commonly used to represent expletives plus the phrases: "out to get me", "scurrilous scum," and "no fraud." The other three booths were surrounded only by the words: "click," "yawn," "ho-hum," "heh-heh," and "hars-hars." The third cartoon identified in the complaint as libelous is a caricature of Wecht with a wide grin on his face while he holds a newspaper with the headline: "Gene Coon Arrested." The remaining allegedly objectionable publications are two newspaper columns which will be discussed later.

Appellant's complaint avers that the two newspaper articles and three editorial cartoons appearing in the Pittsburgh Post-Gazette were published with the specific intent of smearing and besmirching Wecht's reputation. Appellant argues the publications conveyed false impressions and statements about him and that the newspaper published them with full knowledge that they were false. Initially, appellant urges that the trial court erred in sustaining appellees' preliminary objections because it applied the wrong standard of law. Appellant argues that the trial judge did not decide the alleged defamatory publications were incapable of bearing defamatory meaning in the minds

of the average person but rather the judge reached this conclusion based on his own subjective belief.

■ Wecht asserts that in determining whether a particular publication is capable of defamatory meaning

the test is the effect the [entire] article is fairly calculated to produce, the impression it would naturally engender in the minds of the average person among whom it is intended to circulate. The words must be given by judges and juries the same significance that other people are likely to attribute to them.

*Zartman v. Lehigh County Humane Society*, 333 Pa.Super. 245, 251, 482 A.2d 266, 269 (1984). We are in full agreement with appellant's assertion. *See also Rutt v. Bethlehems' Globe Publishing Co.*, 335 Pa.Super. 163, 484 A.2d 72 (1984). However we cannot agree with appellant's argument that the trial judge concluded that the questioned communications were not defamatory based upon his own personal beliefs. The trial judge reached this conclusion after determining that in the "mind of the reader" the articles and cartoons were incapable of defamatory meaning. The court employed phrases such as "the most attentive reader" and "among the reading public" to set forth its determination. Therefore, despite appellant's arguments to the contrary, the trial court applied the correct standard of law in determining that the editorial cartoons and the articles could not be reasonably construed as defamatory.

Appellant next contends that each of the challenged publications is capable of bearing defamatory meaning. In regards to the cartoon which depicts Wecht as a "cycoon," appellant argues that the cartoon portrays him as a "scurrilous scum." [1] Wecht submits that by portraying him as

---

1. Even though the cartoon does not directly refer to Wecht as a "scurrilous scum," appellant argues that such a reference is made implicitly. Appellant contends that because the language of the "cycoon" is abusive and coarse and contains the intended obscenity—scurrilous scum—the "cycoon" himself is portrayed as being a scurrilous scum. To accept this argument, the court would be required to take a leap in logic. We are not prepared and/or willing to perform such a feat. It is clear that the term is shown as spoken by Dr. Wecht

actually acting in such a coarse, vile, obscene and abusive manner, the cartoon conveys to the reader the false and defamatory impression that he is a "scurrilous scum" whose actions befit such description. As to the cartoon which pictures Wecht within the private world of the voting booth spewing obscenities, appellant claims that the false and defamatory impression conveyed to the reader is that Wecht is an obscene, vile and/or abusive individual. Appellant laments further that this cartoon communicates to the reader that Wecht is a paranoid individual with a guilty conscience. Concerning the third contested cartoon wherein Wecht is represented as being overjoyed at the news of Sheriff Gene Coon's arrest, appellant opines that it falsely brands him as an insensitive, malicious, hypocritical person who takes delight in the misfortune of others. Wecht maintains that the cartoons injured his reputation, exposed him to public hatred, contempt and ridicule and falsely ascribed to him a lack of competence and fitness for his public office.

■ While we do not doubt that Wecht was embarrassed and annoyed by the publication of these cartoons and the way in which they portrayed him, not every embarrassing or annoying publication constitutes libel. "A publication which charges that an individual is actuated by unpleasant or undesirable [characteristics] may offend his sensitivities but is not thereby libelous." *Rybas v. Wapner*, 311 Pa.Super. 50, 52, 457 A.2d 108, 110 (1983). In the present case, appellant asserts that the cartoons portrayed him as a vile, obscene, abusive, insensitive and paranoid individual. While no one cares to be presented in such a light, we are not persuaded that such characterization is libelous. "Statements which . . . are annoying or embarassing, are, without more, not libelous." *Bogash v. Elkins*, 405 Pa. 437, 440, 176 A.2d 677, 678 (1962).

himself and portrayed as being directed toward others. A reasonable reader could not reasonably conclude that the term was *directed back* at the speaker.

"The law stands as a guardian to protect a man's good name earned in the heat of battle, in the sweat of work, and in the laboratory of conscience, but it cannot prescribe hospitalization for abrasions or order surgery for hiccough." *Kernick v. Dardanell,* 428 Pa. 288, 293, 236 A.2d 191, 193 (1967). The cartoons which appeared in the Pittsburgh Post-Gazette do not come within the parameters of what constitutes libel. Reading the alleged defamatory cartoons against the circumstances under which they were published, it is clear that even the most careless reader would understand that the cartoons were no more than a humorous exaggeration of what the cartoonists believed to be Wecht's undesirable traits. Appellees did not publish a factual news report expecting the reading public to take it at face value but cartoons in which they intended to present editorial comment on Wecht's personality. No reasonable person would conclude more than that in appellees' opinion Wecht possessed some personality traits of which they were not fond.

The question of whether a challenged publication is fact or opinion is one of law to be answered by the trial court. *Braig v. Field Comm.,* 310 Pa.Super. 569, 456 A.2d 1366 (1983). When viewed without a forced interpretation, the cartoons cannot be understood to state facts concerning Dr. Wecht. Individuals exposed to these cartoons will appreciate the context under which they were published and will not view these exaggerated imprecise comments on Wecht in their literal sense. "Americans have been hurling epithets at each other for generations ... [c]ertainly such name calling, either express or implied, does not always give rise to an action in libel." *Raible v. Newsweek, Inc.,* 341 F.Supp. 804, 809 (W.D.Pa.1972). In a number of instances, Pennsylvania courts have refused to find epithets of a more serious nature capable of defamatory meaning. *Rybas v. Wapner,* 311 Pa.Super. 50, 457 A.2d 108 (1983) (anti-Semitic); *Fram v. Yellow Cab Co.,* 380 F.Supp. 1314 (W.D.Pa.1974) (paranoid schizophrenic); *Raible v. Newsweek, Inc., supra* (bigot). In the present case, the view that

Wecht is a vile, obscene, abusive and insensitive person would only result if the forced interpretation suggested by appellant is employed. Viewed in their natural sense, the cartoons do not reflect upon Wecht's character in such a manner as to cause him to suffer ridicule, hatred or contempt in the minds of a respectable class of the community.

> The person who is the target of unkind words is bound to feel hurt, but he or she often exaggerates in his or her mind the extent of damage done to his or her reputation in the public mind. The public has many things to think and talk about, and it does not linger on [cartoons which appear in the local newspaper.]

*Kernick,* 428 Pa. at 292, 236 A.2d at 192.

█ The analysis which we employed to determine that the cartoons were incapable of defamatory meaning is also helpful in resolving the question of whether the satirical article wherein appellant is referred to as "Pittsburgh's leading defendant" is defamatory. Considering the article as a whole, there is no doubt that even the most inattentive reader would not understand the statements presented in this article as fact. In the author's opinion the city of Pittsburgh is in need of improvement in a number of areas. To express this view, the author chose a satirical format in which he suggested a tour of the city wherein visitors would see the "real Pittsburgh." Highlights of this tour include: taking a Pittsburgh cab (the most expensive in the world); stopping at the City-County Building to sit in and watch Pittsburgh's leading defendant, Cyril Wecht, in action; watching the Allegheny County Commissioners perform their only serious chores—awarding medals and citations to Little League teams, beauty queens and cub scout dens; avoiding taking a bus destined for Mt. Washington because those buses are never seen again; pausing for a moment of silence after crossing the Smithfield Street Bridge in memory of those Pittsburgh residents who must cross this bridge everyday because it is falling into the Monogahela River piece by piece; and finally, marveling that 16 lanes of traffic manage to merge into four lanes at

the Fort Pitt Bridge without something catastrophic happening. The nature and content of the article suggest nothing more than a gross overstatement of Pittsburgh ills. It would be obvious to the reasonable reader that appellees approached this subject tongue-in-cheek and that these statements were not the by-product of extensive analysis and accumulation of data. *Redding v. Carlton*, 223 Pa.Super. 136, 296 A.2d 880 (1972).

■ Even the most inattentive reader would not accept this article as a factual narrative. Considering the totality of the printed material, including the headline, we find this publication incapable of defamatory meaning. *Thomas Merton Center v. Rockwell International Corp.*, 497 Pa. 460, 442 A.2d 213 (1981). The reception of this article by the community in which it was circulated was not such that Wecht's reputation was harmed or he was held in lower esteem. Surely, appellees had the right to state their view of Pittsburgh. Appellees obviously are impressed by the fact that Wecht has been in court as a defendant. Since Wecht's criminal and civil trial regarding his use of city workers for his private laboratories is a matter of public record, appellees merely exaggerated this fact to the absurd to emphasize their opinion of Wecht. *See* Restatement (Second) of Torts, § 566 (expression of opinion not defamatory unless it implies allegations of undisclosed fact); *Hoover v. Peerless Publications, Inc.*, 461 F.Supp. 1206 (E.D. Pa.1978). Communications of this genre serve to animate public dialogue and commentary. In this case, the use of such hyperbole cannot be held to be defamatory. "Thus, [Wecht is] not to be offended if [his] lawsuit is referred to as a tempest in a teapot, a hurricane in a fish bowl, or a Pickett's Charge in a chicken coop." *Scott-Taylor, Inc. v. Stokes*, 425 Pa. 426, 427, 229 A.2d 733, 734 (1967) (not defamatory to state that plaintiff's apartment buildings look like "chicken coops").

The final publication at issue is an article concerning an interview of Allegheny County District Attorney Robert E. Colville by appellees' editorial board at the time Colville was

running for re-election. The story's headline read: "Court Order Will Free Rapists, Murderers, Colville Says." The article included Colvilles' comments on a number of issues: overcrowding at the County jail; Colville's policy of not accepting plea bargains for second offenders; Colville's policy of allowing the Warden and the Prison Board to determine who goes on parole; Colville's own political future; and, why Colville refused to charge Wecht with attempting to improperly influence State Supreme Court Justice Rolf Larsen.

■ Commenting on his decision not to bring charges against Wecht, Colville stated that he had no indication that anything illegal occurred. Far from disparaging Dr. Wecht, such a comment would act to exonerate him in the eyes of the public. We fail to see how a statement in which it is averred that an individual has failed to do anything illegal is capable of defaming that individual. *Contra Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 273 A.2d 899 (1971) (a statement which falsely imports that an individual has committed a crime is defamatory *per se* ); Restatement (Second) of Torts, § 571. Colville stated that Wecht contacted Justice Larsen *apparently* to get help with some criminal charges which had been levied against Wecht. Surely, such language was sufficient to clarify Colville's position that he did not believe any type of criminal activity had transpired between Justice Larsen and Wecht.

■ Even when considered in conjunction with the headline, it is clear that this publication is incapable of defamatory meaning. While the headline refers to rapists and murderers, the reasonable reader would not associate Wecht with this statement. It is inconceivable that Wecht's reputation would be besmirched by such a communication.

The second issue raised by Wecht involves the propriety of the trial court's sustention of appellees' preliminary objections to appellant's false light/invasion of privacy claim. Appellees' preliminary objections to this claim included an allegation that as a matter of law the cartoons

and articles did not portray Wecht in a false light, highly offensive to a reasonable person. Appellees' also claimed a privilege under the First Amendment to the United States Constitution.

As discussed previously, preliminary objections are not the proper stage to determine the viability of conditional Constitutional privileges such as the one raised herein. *Vitteck v. Washington Broadcasting Co., Inc.*, 256 Pa.Super. 427, 389 A.2d 1197 (1978). Therefore, only one potential basis existed for dismissal of Wecht's claim for false light/invasion of privacy. The trial court, while dismissing Wecht's complaint in its entirety, did not address appellees' objections to the false light/invasion of privacy claim; only the non-defamatory nature of the cartoons and articles was discussed. "As such, dismissal of the complaint in its entirety was procedurally unauthorized." *Zartman v. Lehigh County Humane Society*, 333 Pa.Super. 245, 255, 482 A.2d 266, 271 (1984).

We affirm the trial court's order dismissing appellant's claim of libel. However, we vacate that order insofar as it dismissed Wecht's claim of false light/invasion of privacy and remand for further proceedings. Jurisdiction relinquished.