# Greene v. Street

*Clifford E. Haines* and *Lauren Ann Cates,* for plaintiff. *Michael A. Bowman* and *Charles M. Gibbs,* for defendant.

TERESHKO, *J.*, August 5, 2011—Plaintiff appeals from this court's order of February 8, 2011 granting defendant's preliminary objections in the form of a demurrer and dismissing plaintiff's complaint.

## FACTUAL BACKGROUND

On September 26, 2010 the plaintiff, Carl Greene (hereinafter Greene), was removed from his position as Executive Director of the Philadelphia Housing Authority (hereinafter PHA). (Defendant's memorandum of law, pg. 2). Greene was removed for reasons of gross misconduct, including, amongst other things, allegations of sexual harassment. (Defendant's memorandum of law, pg. 3). On December 7, 2010 Greene filed a civil action complaint against defendant John F. Street (hereinafter Street),

former Mayor of Philadelphia and present Chairman of the PHA. The action alleged a single count of defamation and a single count of false light invasion of privacy. (Defendant's preliminary objections, ¶ 1).

Prior to Street's interview during which he was asked about Greene's wrongdoings, which is the subject of this action, there had been substantial in-depth public coverage of Greene's misconduct leading up to this television appearance. (Plaintiff's memorandum of law, pg. 4). On August 13, 2010, the *Daily News* reported that Wells Fargo had started foreclosure proceedings against Greene. (Plaintiff's memorandum of law, pg. 4). The next day, both the *Daily News* and *The Philadelphia Inquirer,* the two most prominent and widely read daily newspapers in the Greater Philadelphia area, ran stories documenting federal tax liens against Greene. (Plaintiff's memorandum of law, pg. 4). On August 18, 2010, the *Daily News* wrote about Greene's further wrongdoings, reporting that Elizabeth Helm, a PHA employee, had filed sexual harassment claims against Greene. (Plaintiff's memorandum of law, pg. 4). Subsequently, The *Philadelphia Daily News* ran a series of detailed articles documenting claims by various women employed by the PHA alleging sexual harassment against Greene. (Plaintiff's memorandum of law, pg. 4).

Following the publication of the abovementioned news articles and continuous public coverage of Greene's misconduct, Street appeared on Channel 6, ABC's *Inside Story,* on October 24, 2010. (Defendant's preliminary objections, ¶ 2). During the course of the televised interview, Street was asked, how, as Chairman, he knew nothing about the "goings on" (referring to the aforementioned

misconduct of Greene) at the PHA. (Complaint, ¶ 80). By way of explanation as to absence of any awareness of these events Street offered his opinion that, "Mr. Greene 'lied about everything' during his tenure at the PHA." (Complaint, ¶ 81). This brief statement forms the sole basis for Greene's complaint and allegations of false light and defamation.

On December 27, 2010 Street filed preliminary objections pursuant to Pa.R.C.P. 1028(b)(4) for legal insufficiency of a pleading in regards to both claims of false light and defamation. The preliminary objections maintain that Greene failed to plead the required element of actual malice, an element necessary for a public official to prove for both claims of false light and defamation. (Defendant's preliminary objections, ¶¶ 5, 6). It was also argued that Street's statement was based on disclosed public facts and is therefore non-actionable. (Defendant's preliminary objections, ¶¶ 12, 22). The preliminary objections further assert that Street has absolute immunity from Greene's claims based on high official immunity. (Defendant's preliminary objections, ¶ 27).

Greene filed his response to the preliminary objections on January 18, 2011, contending that Street's comment was not a matter of opinion and it was made with actual malice. (Plaintiff's memorandum of law, pg. 23). The Response also argues that Street is not relieved of liability based on high official immunity. (Plaintiff's memorandum of law, pg. 23).

By a finding and order (attached as Exhibit A) dated February 8, 2011 this court granted the defendant's

preliminary objections in the form a demurrer and dismissed the complaint. Greene appealed the order on March 10, 2011 and issued his Statement of Errors pursuant to Pa.R.C.P. 1925(b) on April 8, 2011.

The issue to be addressed on appeal is whether the court erred in finding that plaintiff failed to establish legally sufficient claims for false light or defamation as a matter of law.

## LEGAL ANALYSIS

A preliminary objection in the nature of a demurrer tests the legal sufficiency of a plaintiff's complaint. *Smith v. Wager*, 403 Pa. Super. 316, 588 A.2d 1308, 1311 (1990). In Pennsylvania, Pa.R.C.P. 1028(a)(4) provides that a party may preliminarily object to a pleading for being legally insufficient to state a cause of action. "A preliminary objection in the nature of a demurrer must be sustained where it is clear and free from doubt that the law will not permit recovery under the facts alleged." *Petsinger v. Dept. of Labor Indus.,* 988 A.2d 748, 753 (Pa. Cmwlth. 2010). Counts alleging defamation should be dismissed based on preliminary objections in the nature of a demurrer if it is clear that the communication is incapable of defamatory meaning. *Petula v. Mellody,* 138 Pa. Cmwlth 411, 588 A.2d 103, 108 (1991). In order to sufficiently state a cause of action for defamation, a plaintiff must establish that the defendant: (1) made defamatory communication; (2) about the plaintiff; (3) that was communicated to a third party; (4) who understood the defamatory meaning of the communication about the plaintiff; (5) where the plaintiff suffered special harm as a result of the communication;

and (6) that any privilege invoked by the defendant was abused. 42 Pa.C.S.A. § 8343.

The tort of false light invasion of privacy is defined in the Restatement of Torts § 652 as "...publicity to a matter concerning another that places the other before the public in a false light [...]." To adequately establish a false light invasion of privacy action the plaintiff must prove: "(1) the false light in which the other was placed would be highly offensive to a reasonable person and, (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement of Torts § 652E, See also *Strickland v. University of Scranton*, 1997 Pa. Super. LEXIS 2894, 700 A.2d 979 (1997).

Greene's complaint alleges one count of defamation and one count of false light. The main issues that befall plaintiff's complaint are whether: (1) Greene failed to plead and prove "actual malice" as part of his defamation claim; (2) the statement at issue made by Street that Greene "lied about everything" did not support a claim for false light invasion of privacy where the statement pertained to a highly visible and public controversy; (3) the statement "he lied about everything," was offered as a matter of opinion and is incapable as a matter of law as having a defamatory meaning and; (4) Street is immune from liability for defamation and false light claims under the doctrine of high public official immunity when commenting on a matter within the scope of his duties and responsibilities as Chairman of the PHA.

*High Public Official Immunity*

The affirmative defense of high public official immunity may be raised by preliminary objections in the nature of a demurrer where that defense is apparent on the face of the pleading. *Wurth v. City of Philadelphia*, 136 Pa. Comwlth. 629, 584 A.2d 403, 407 (1990). The Pennsylvania Supreme court has recognized that the public interest is best served by granting broad immunity to high-ranking officers, thereby promoting "unfettered discharge of public business and full public knowledge of the facts and conduct of such business. [High public official] immunity is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies." *Montgomery v. City of Philadelphia*, 392 Pa. 178, 183, 140 A.2d 100, 103 (1958).

The Supreme Court of Pennsylvania defines high public official immunity as:

> ...unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or action motivated by malice, provided the statements are made or actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.

*Matson v. Margiotti*, 371 Pa. 188, 194; 88 A.2d 892, 895 (1952).

The determination of whether a public officer falls within the immunization provided by high public official immunity requires an examination of the officer's duties. This includes an inquiry as to the nature of his duties, the importance of his office, and whether he has

policy making power. *Montgomery*, 140 A.2d at 150. In *Montgomery*, the Supreme Court of Pennsylvania held that the Deputy Commissioner of Public Property of Philadelphia and the City Architect of Philadelphia were entitled to immunity for defamatory statements they made to the press. *Id* at 105. Also, an important factor in the evaluation of whether someone is a high public official for the purpose of absolute immunity is whether he or she exercises "responsibility for independent initiation of administrative policy regarding some sovereign function of...government." *Rok v. Flaherty*, 106 Pa. Comwlth. 570, 527 A.2d 211, 213 (1987).

An important requirement for high public official immunity is that the statements made or actions taken were done so in the course of the official's duties. *Matson*, 88 A.2d at 892. The immunity applies to all statements which are "closely related" to the performance of those official duties. *Mosley v. Observer Publishing Co.*, 422 Pa. Super. 255, 619 A.2d 343, 346 (1993). Furthermore, "[a] liberal construction is applied to determine whether an action falls within the official's duties." *Barto v. Felix,* 250 Pa. Super. 262, 378 A.2d 927, 929 (1977).

As Chairman of the PHA, Street is clearly protected by high public official immunity. As Chairman of a Commonwealth agency, Street is responsible for the administration of a multi-million dollar budget and has the power to make a broad range of policy decisions. The Pennsylvania Housing Authorities Law, 35 P.S. 1541 et seq. establishes the Philadelphia Housing Authority as a "public body, corporate and politic" that exercises "the public powers of the Commonwealth as an agency

thereof, which powers...include all powers necessary or appropriate to carry out and effectuate the purpose and provisions of [the Act]." 35 P.S. § 1150. Street's authority as Chairman derives directly from §§ 1545-47 of the Act.

Street's authority includes oversight of a $340 million annual budget as well as 1,250 employees. He has independent power to make administration and policy decisions and there is no doubt that his function is of great importance at the PHA. If, as in *Montgomery v. Philadelphia*, 392 Pa. 178, 140 A.2d 100 (1958), a school board director is sufficiently important to qualify as a high public official, or, as in *Schroak v. Pennsylvania State Police*, 26 Pa. Commw. 41, 362 A.2d 486 (1976), a state police captain in charge of a local troop can be granted high public official immunity, Street's position as Chairman of the PHA unquestionably warrants the same status.

Further, Street was clearly acting within the course of his official role as Chairman of the PHA. While on a local news program, Street was asked why he had not known about the "goings on" at the PHA. When responding, he was commenting in his capacity as Chairman about the conduct of one of its public employees and therefore was acting within his official duties at PHA. Furthermore, as Chairman, Street had an obligation and duty to respond to public charges and criticisms related to the PHA. Accordingly, because Street both qualifies as a high official and was acting within the scope of his duties, he qualifies for high public official immunity. Therefore, Street is immunized from liability for the opinion he offered regarding Greene, and Greene's claims for false light invasion of privacy and defamation must be dismissed.

*Failure to Plead Actual Malice*

In order to establish a claim for defamation as a public figure, the plaintiff must prove with "convincing clarity" that the defendant acted with actual malice. *New York Times v. Sullivan*, 376 U.S. 254, 281 (1964); *Smith v. Wagner*, 402 Pa. Super. 316, 588 A.2d 1308, 311 (1991), (housing authority director is public figure for purposes of defamation action). "An individual is a...public figure if he or she has 'general fame or notoriety in the community, and a pervasive involvement in the affairs of society.'" *Getz v. Robert Welch, Inc*, 418 U.S. 323, 352 (1974). To establish actual malice, it must be pled and proven that the defendant acted with "knowledge or reckless disregard of the falsity of the objectionable statements." *Smith*, 588 A.2d at 1131.

Greene, as Executive Director of the PHA and the center of a highly public controversy, is undoubtedly a public figure. The allegations surrounding Greene's tax liens and accusations of sexual harassment go directly to his integrity as a public employee for the PHA. Therefore he must plead and prove that Street acted with actual malice. However, nowhere in Greene's complaint does he even allege actual malice and, thus, his claim for defamation must fail.

Greene's failure to plead actual malice also proves fatal to his claim for false light. Our Superior Court has consistently held that to sustain a false light claim "the person making the statement that is accused of rending another in a false light must act with 'knowledge of or... in reckless disregard as to the falsity of the publicized

matter and the false light in which the [plaintiff] would be placed.'" *Rush v. Philadelphia Newspapers, Inc*, 1999 Pa. Super. 141, 732 A.2d 648, 655 (Pa. Super. 1998) (quoting *Larsen v. Philadelphia Newspaper, Inc.*, 735 Pa. Super. 66, 543 A.2d 1181 (1988)).

Thus, Greene's failure to plead actual malice in his complaint warrants a dismissal of both his false light and defamation claims. However, this court will also separately examine the individual inadequacies that invalidate the plaintiff's false light and defamation claims.

### False Light

In addition to the element of malice, the tort of false light entails "publicity that unreasonably places the other in a false light before the public." *Strickland v. University of Scranton,* 1997 Pa. Super. LEXIS 2894, 700 A.2d 979, 987 (1997). The elements of this claim that must be proven are publicity, given to private facts, which would be highly offensive to a reasonable person and not of legitimate concern to the public. *Id.* (lawsuit against plaintiff is a public, not private fact). See also *Marricone v. Experian Information Solutions, Inc.*, 2009 U.S. Dist LEXIS 93003 (E.D. Pa. Oct. 6, 2009) (publication of the existence of a judgment is a public fact, not a private fact). However, Greene has failed to establish that the publicity at issue involved private facts and that those facts were not of public concern.

The first issue proving fatal to Greene's claim is the requirement of private facts. To be a private fact it must not already be in the public domain and the recipient must not have prior knowledge of the fact. *Harris by Harris*

*v. Easter Publishing Company,* 335 Pa. Super. 141, 483 A.2d 1377, 1384 (1984). In other words, "liability cannot be based upon that which the plaintiff leaves open to the public eye...[and] where publicity given involves facts where the recipient is familiar." *Id.*

Also detrimental to Greene's claim is the fact that he failed to establish that this publicity was not of legitimate concern to the public. This element "exempts from liability those facts which are of legitimate concern to the public... [and] applies to persons, who voluntarily or involuntarily, have become public figures." *Id* (citing Restatement (Second) of Torts § 652D).

Here, Greene is at the center of a media frenzy concerning a highly public controversy involving his misconduct and allegations of sexual harassment while a public employee at the PHA. This information, which led to the question posed on the television program *Inside Story*, related to public facts, not private ones. The allegations of foreclosure, repeated sexual harassment, and federal tax liens against Greene, as well as his lack of candor regarding these accusations, were squarely in the public domain prior to any statements by Street. It was through Greene's own actions and omissions that this controversy was thrown into the public eye and open to public debate. Greene cannot now claim that this issue concerns private facts.

Furthermore, misconduct of the Executive Director of the PHA is of legitimate concern to the public. The community needs to be kept informed of the misconduct and wrongdoings of public officials. Therefore, Greene

fails to establish both that the communication at issue involved private facts and that the information was not of legitimate concern to the public. As such, his claim for false light must fail.

### Defamation

In an action for defamation, the plaintiff has the burden of proving the defamatory character of the communication. 42 Pa.C.S. § 8343(a). "It is the function of the court to determine whether the challenged publication is capable of a defamatory meaning [and] [i]f the court determines that the challenged publication is not capable of defamatory meaning, then there is no basis for the matter to proceed to trial." *Tucker v. Philadelphia Daily News*, 577 Pa. 598, 615, 848 A.2d 113, 123 (2004) (quoting *Thomas Merton Center v. Rockwell International Corp.*, 497 Pa. 460, 442 A.2d 213, 215-16 (1981)). To determine whether a statement is capable of defamatory meaning, the court must consider "whether the statement tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Id* at 124 (quoting *Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 303, 167 A.2d 472, 475 (1960)). Mere embarrassment or annoyance is not enough; the plaintiff must suffer severe harm that grievously injures his standing in the community. *Id.*

Additionally, statements of opinion lack the capability of being defamatory. See *Kurowski v. Burroughs*, 2010 Pa. Super. 69, 994 A.2d 611, 616 (2010). "A statement in the form of an opinion is actionable only if it may reasonably be understood to imply the existence of *undisclosed*

defamatory facts justifying the opinion." *Id.* (emphasis added) (quoting *Veno v. Meredith,* 357 Pa. Super. 85, 515 A.2d 571, 575 (1986). A mere statement of opinion based on disclosed facts is not enough to establish a defamation action. *Id.* The principle that a statement of opinion cannot support a claim for defamation has been firmly established in Pennsylvania. For example, in *Neigh v. Beaver Newspapers, Inc.* 398 Pa. Super. 588, 581 A.2d 619, 622-24, the court found that an editorial criticizing the performance of the solicitor of Beaver County and suggesting he be replaced was a statement of opinion. The court further noted that while the statements "might be viewed as annoying and embarrassing, [they were] not tantamount to defamation." *Id.*

The United States Supreme court has also recognized that an action for defamation cannot be based on statements of opinion. The court in *Gertz v. Welch,* 418 U.S. 323, 339 (1974) stated, "under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas." Additionally, a defamation action cannot be based on a statement made in loose figurative language that is not "sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Loraine Journal Co.,* 497 U.S. 1, 19 (1990).

Similarly, statements of rhetorical hyperbole or mere name-calling cannot sustain a defamation action. "A publication which charges that an individual is actuated by unpleasant or undesirable [characteristics] may offend the sensitivities but is not thereby libelous." *Wecht v. PG*

*Pub Co.*, 353 Pa. Super. 493, 510 A.2d 769, 773 (1986). In *Wecht,* the court held that cartoons that portrayed the plaintiff as a "vile, obscene, abusive, insensitive, and paranoid individual" did not go so far as to be libelous. *Id.* They went on to state that "[w]hile no one wants to be presented in such light...'[s]tatements which... are annoying or embarrassing, are, without more, not libelous."' *Id.* (quoting *Bogash v. Elkins,* 405 Pa. 437, 440, 176 A.2d 677, 678 (1962)). Furthermore, exaggerated and imprecise comments should not be viewed in a literal sense and are incapable of possessing defamatory meaning. *Id* at 774. "Americans have been hurling epithets at each other for generations...[c]ertainly such name calling, either expressed or implied, does not always give rise to an action for libel." *Raible v. Newsweek, Inc.,* 341 F. Supp. 804, 809(W.D. Pa 1972).

Pennsylvania courts have recognized that criticisms, hyperbole, and opinions directed at public officials are not considered actionable defamation. In *Redding v. Carlton,* 223 Pa. Super. 136, 296 A.2d 880, 822 (1980), the court held that statements accusing the township supervisor of "a conflict of interest at the very least, and perhaps more" was nothing more than "the type of rhetorical hyperbole common to American politics" and, therefore, not actionable. The court went on to say:

> [I]n deciding whether or not a publication is defamatory, court should be guided by America's profound "commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes

unpleasantly sharp attacks on government and public officials." *New York Times Company v. Sullivan*, 376 U.S. 254, 270 (1964). The constitutionally protected area of free speech revolves around the freedom to criticize government and the officials responsible for government operations. *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). To prevent the chilling effect on free speech, the Supreme Court of Pennsylvania has held that "statements which represent difference of opinion or are annoying or embarrassing, are, without more, not libelous." *Bogash v. Elkins*, 405 Pa. 338, 440; 176 A2d 677, 679 (1962). Neither is a statement libelous which is no more than rhetorical hyperbole or a vigorous epithet used to describe what the publisher believed to be another's extremely unreasonable position. *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 14 (1970).

*Id* at 882.

Here, the opinion offered by Street in response to an inquiry about the "goings on" at PHA is incapable of defamatory meaning and, therefore, not actionable. Street's response to the inquiry as to how he and the PHA were unaware of Greene's misconduct by opining that he "lied about everything" was a response to a reasonable question which explained the lack of awareness of PHA board members to the recent public exposure of Greene's ongoing issues. While the statement may cause Greene to "be embarrassed or annoyed" it does not cause "the kind of harm which...grievously fracture[s] his standing in the community of respective society." *Tucker*, 848 A.2d at 124. Taken in context, Street's statement does not provide

a factual basis to establish that it is capable of defamatory meaning.

Furthermore, this statement is a mere opinion based on already disclosed facts. Street was simply stating his personal subjective view and, as such, his statement is not capable of defamatory meaning. Moreover, this opinion was based on facts already in the public purview. Various articles about Greene's scandal were published in the most popular newspapers in Philadelphia and, in fact, Greene pleads in ¶ 59 of his complaint that the PHA investigative report had already been disclosed. Given the circumstances surrounding Street's statement, it does not give rise to a cause of action for defamation.

While Greene contends in ¶ 90 of his complaint that calling a person who "lied in the performance of his professional obligations constitutes libel per se" that is in fact erroneous. Greene cites *Smith v. Wager*, 403 Pa. Super. 316, 588 A.2d 1308 (1980) for the proposition calling someone a liar is per se defamation, but that is an incorrect use of case law. The court in Smith clearly states: "Such statements (calling someone a liar, a thief and a crook) are, as a matter of law, *capable* of defamatory meaning." *Id* at 1311. (emphasis added). Being capable of defamatory meaning is vastly different than being per se defamatory.

Given its context and the circumstances surrounding Greene's tax liens and sexual harassment claims, Street's comment was an opinion based on the facts presented to him surrounding Greene's foreclosure on his home, tax liens, and allegations of sexual harassment while employed

at the PHA.

## CONCLUSION

For the foregoing reasons, this court respectfully requests that the February 8, 2011 order granting defendant's preliminary objections in the form a demurrer and dismissing plaintiff's claims for false light invasion of privacy and defamation be affirmed.